NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4887-11T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GERALDO RIVERA, a/k/a GERARDO DIAZ
and JUAN RIVERA,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 10, 2014**
>
> **APPELLATE DIVISION**

Argued January 23, 2014 — Decided October 10, 2014

Before Judges Grall, Nugent and Accurso.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-03-0331.

Joseph J. Benedict argued the cause for appellant (Benedict and Altman, attorneys; Mr. Benedict and Philip Nettl, on the brief).

Nancy A. Hulett, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Acting Middlesex County Prosecutor, attorney; Ms. Hulett, of counsel and on the brief).

The opinion of the court was delivered by

GRALL, P.J.A.D.

A grand jury charged defendant Geraldo Rivera with attempting to murder Sean and Michael Burns during a fight that started at a bar inside a liquor store and ended in the parking lot. The jury acquitted defendant of those charges but convicted him of lesser-included offenses: with respect to Sean, second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); and with respect to Michael, fourth-degree aggravated assault, N.J.S.A. 2C:12-1b(3).[1]

The judge sentenced defendant to eight years' imprisonment for the second-degree assault, subject to terms of parole ineligibility and supervision required by the No Early Release Act, N.J.S.A. 2C:43-7.2, and to a concurrent fifteen months' imprisonment for fourth-degree assault. The judge also imposed the monetary assessments and penalty mandated by N.J.S.A. 2C:43-3.1 to -3.3, and a $3658 restitution obligation, a total of $4038.

Certain facts were undisputed. The fight, verbal at first, started after defendant questioned Sean about not leaving a tip for the bartender, who was then defendant's fiancée. It ended

---

[1] The grand jurors also indicted Sandeep Yadav and Sabiq Ponder and charged them with tampering with evidence, two counts of hindering apprehension and obstruction of a criminal investigation. N.J.S.A. 2C:28-6(a), :29-1, :29-3a(4). Prior to defendant's trial, Ponder was admitted to pre-trial intervention and Yadav pled guilty. Ponder testified for the defense at trial, and Yadav did not testify.

with broken bottles inside and outside the establishment; Sean with four knife wounds to his torso; Michael with a cut across his abdomen that exposed his intestines and injured his stomach; and defendant with two head wounds and a scar on his forehead.

The defense was self-defense. Defendant admitted to swinging a utility knife he carried because of his work as a linesman to defend himself against what he believed would be a fatal "stomping" from the brothers. He also admitted that he stabbed Sean and cut Michael in the process. Michael acknowledged striking defendant in the head with a piece of asphalt, which he claimed to have done because he saw defendant stabbing Sean.

The participants in the fight - defendant, Michael and Sean — and their respective eyewitnesses gave widely divergent accounts of what happened between defendant's criticism of Sean and the arrival of the police. Each side cast the other as the aggressor, and there was no medical testimony. Thus, in deciding whether the State proved that defendant was not acting in self-defense, the jury had to decide between the conflicting accounts of who did what and when.

The details of the conflicting accounts are not important to resolution of the issues raised on this appeal. There is no question that the evidence and reasonable inferences, viewed in

the light most favorable to the State, provide adequate support for the jury's verdict. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (constitutional standard for evidence adequate to withstand a motion for judgment of acquittal); State v. Reyes, 50 N.J. 454, 459 (1967) (same). All of defendant's claims concern the conduct of the assistant prosecutor who tried the case, which defendant contends deprived him of a fair trial. His contentions are as follows:

> I. The State's violation of the [o]rder sanitizing his prior convictions should have resulted in a mistrial. (Raised below).
>
> II. The State's misconduct in climbing into the jury box in the middle of cross-examination of State's witness should have resulted in a mistrial. (Raised below).
>
> III. The trial court erred in permitting the introduction of hearsay statements Michael Burns made to Officer McCauley, which was compounded by the misuse of those statements in the State's summation. (Partially raised below).
>
> IV. The State's comments in opening and summation deprived [d]efendant of a fair trial. (Partially raised below).
>
> > A. The State introduced an unduly prejudicial visual presentation during its opening statement which expressed an opinion as to [d]efendant's guilt in inflammatory ways. (Raised below).
> >
> > B. The State improperly vouched for the

credibility, or lack thereof, of witnesses in summation. (Not raised below).

C. The State misstated the law. (Raised below).

V. Cumulative error deprived [d]efendant of a fair trial.

For the reasons that follow, we conclude that the cumulative impact of the assistant prosecutor's conduct deprived defendant of a fair trial.

A.

The well-established principles guiding prosecutorial conduct are easily stated and not unique to New Jersey. "[T]he primary duty of a prosecutor is not to obtain convictions but to see that justice is done. 'It is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" State v. Timmendequas, 161 N.J. 515, 587 (1999) (internal citation omitted) (quoting State v. Farrell, 61 N.J. 99, 105 (1972) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935))).

This case demonstrates the need to stress what those principles require. Prosecutors must choose their tactics in conformity with their legal duties. Thus, they are not free to

employ a prejudicial tactic just because the precise action has not yet been expressly condemned by the Supreme Court. Similarly, when a reviewing court has declared a method improper in a published opinion but concluded it to be harmless error in that case, compliance with the prosecutor's obligation does not permit repetition. A finding of harmless but improper prosecutorial conduct cannot, consistent with a prosecutor's duty, be understood as a license to mimic an improper method.

In this case, the cumulative impact of the prosecutor's transgressions requires reversal. As the Supreme Court has recently explained:

> When legal errors cumulatively render a trial unfair, the Constitution requires a new trial. State v. Orecchio, 16 N.J. 125, 129 (1954). "'[W]here any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of [a reviewing] court to reverse.'" Id. at 134 (quoting State v. Dolliver, 150 Minn. 155, 184 N.W. 848, 849 (1921)). If a defendant alleges multiple trial errors, the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair. See State v. D'Ippolito, 22 N.J. 318, 325-26 (1956) (rejecting application of Orecchio because none of alleged errors prejudiced defendant nor impaired fair trial). In assessing whether a defendant received a fair trial, courts are guided by the following principle: "'[D]evised and administered by imperfect humans, no trial can ever be entirely free of even the

A-4887-11T1

smallest defect. Our goal, nonetheless, must always be fairness. A defendant is entitled to a fair trial but not a perfect one.'" State v. Wakefield, 190 N.J. 397, 537 (2007) (quoting State v. R.B., 183 N.J. 308, 333-34 (2005)).

[State v. Weaver, ___ N.J. ___, ___ (2014) (slip op. at 35-36).]

Like Weaver, this "is a classic case of several errors, none of which may have independently required a reversal and new trial, but which in combination dictate a new trial." Id. at 47. Here, as in Weaver, the error involves a constitutional right, and reversal is required unless we can "conclude that the cumulative error was harmless beyond a reasonable doubt." Id. at 48; see Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1965).

Reversal of a conviction based on the prosecutor's conduct is appropriate only if that conduct was "'so egregious that it deprived [the] defendant of a fair trial.'" State v. DiFrisco, 137 N.J. 434, 474 (1994) (quoting State v. Pennington, 119 N.J. 547, 565 (1990)), cert. denied, 516 U.S. 1129, 116 S. Ct. 949, 133 L. Ed. 2d 873 (1996). Stated differently, reversal is warranted when the prosecutor's conduct "substantially prejudice[s] the defendant's fundamental right to have a jury fairly evaluate the merits of his or her defense." State v. Harris, 181 N.J. 391, 495 (2004).

Our courts have previously reversed convictions based on the cumulative impact of a prosecutor's misconduct. See, e.g., State v. Frost, 158 N.J. 76, 87 (1999); State v. Hinds, 278 N.J. Super. 1, 19 (App. Div. 1994), rev'd on other grounds, 143 N.J. 540 (1996). Long ago, the United States Supreme Court concluded that a new trial is required where the prosecutor's misconduct "was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." Berger, supra, 295 U.S. at 89, 55 S. Ct. at 633, 79 L. Ed. at 1321.

Even when the evidence is "overwhelming," strong evidence of guilt can "never be a justifiable basis for depriving a defendant of his or her entitlement to a constitutionally guaranteed right to a fair trial." Frost, supra, 158 N.J. at 87; accord State v. Smith, 212 N.J. 365, 404 (2012) (quoting Frost). Moreover, in a case such as this where the jury has to choose which of two versions of an event to credit, "it simply cannot be said that the evidence is overwhelming." Frost, supra, 158 N.J. at 87.

Some particularized or specific rules have been recognized.

In Berger, the United States Supreme Court explained:

> It is fair to say that the average jury, in
> a greater or less degree, has confidence
> that these obligations, which so plainly
> rest upon the prosecuting attorney, will be

faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

[295 U.S. at 88, 55 S. Ct. at 633, 79 L. Ed. at 1321].

Our Supreme Court has disapproved of any expression of personal or official opinion or belief that a jury could understand as based on something other than the evidence, including a belief in the defendant's guilt "unless [the prosecutor] makes it perfectly plain that his belief is based solely on the evidence that has been introduced at the trial." State v. Thornton, 38 N.J. 380, 398 (1962). The Court reasoned, "that in the minds of jurors such statements may add the weight of the prosecutor's official and personal influence and knowledge to the probative force of the evidence adduced . . . ." Ibid. For that reason, the Court concluded that such statements "creat[e] the possibility that the jurors consciously or unconsciously might adopt the prosecutor's view without applying their own independent judgment to the evidence." Ibid.

Other specific forms of advocacy inconsistent with a prosecutor's duty have been expressly disapproved. Focusing on disapproved conduct in this case, prosecutors generally may not vouch for or bolster a State's witness, Frost, supra, 158 N.J.

at 87; interfere with the jury's right to make a credibility determination by improperly impugning the credibility of a defendant's version of the facts, id. at 88-89; "comment on facts not shown or reasonably inferable from the evidence in the case," Farrell, supra, 61 N.J. at 102; or contend that the police have no motive to lie or face special consequences if they do, State v. R.B., 183 N.J. 308, 331-32 (2005); Frost, supra, 158 N.J. at 85.

For ease of exposition, we address the conduct and principles relevant to the defendant's claims of misconduct separately and in the order in which the prosecutor took each action at trial.

### B.

A prosecutor's opening statement should be limited to what the prosecutor "will prove" and "not anticipate" the prosecutor's summation. State v. Ernst, 32 N.J. 567, 577 (1960). Defendant's core objection to the prosecutor's opening statement is that the prosecutor declared him guilty of the two attempted murders with which he was charged. The prosecutor did that twice — graphically with the last screen of the PowerPoint presentation accompanying his opening and orally in the final sentence of his opening.

The PowerPoint's twenty-first and final screen contains a photograph showing defendant's face and neck, which is displayed with a bright red border. It also includes text, printed in the same color and density, "Defendant GUILTY OF: ATTEMPTED MURDER." The words "Defendant" and "GUILTY OF:" appear on separate lines to the right of defendant's photograph, and "ATTEMPTED MURDER" appears below the photograph in much larger typeface.

In overruling defense counsel's objection to the PowerPoint, the judge explained, "There's nothing specifically prejudicial in the presentation. . . . [T]his is, merely in my view, advocacy and the method by which Mr. Herring is presenting his opening statement."

At the conclusion of the oral portion of his opening, the prosecutor declared defendant guilty of attempted murder a second time. He said, "Defendant is guilty of the attempted murder of a man he stabbed five times and a man [whose] intestines he tore out."[2] Defense counsel did not object, perhaps because his objection to the PowerPoint was overruled.

---

[2] Sean testified that defendant stabbed him five times, but he explained that he sustained four wounds and that one stab did not penetrate at all. Michael testified that his intestines were "hanging out of [him]," but he did not testify that his intestines were injured, and, as previously noted, there was no testimony from a medical professional. Michael also testified that none of his "organs were hit," but he also said a "slice across [his] stomach" required surgery.

Our courts have not yet addressed the use of PowerPoint presentations during opening statements or summations in criminal trials in a published opinion. Other courts have, however, considered the matter.

The Nevada Supreme Court has concluded that a PowerPoint, "as an advocate's tool, is not inherently good or bad" and that "its propriety depends on content and application." Watters v. State, 313 P.3d 243, 247 (Nev. 2013). The Court further determined that a PowerPoint accompanying an opening is permissible if "the content is consistent with the scope and purpose of opening statements and does not put inadmissible evidence or improper argument before the jury." Ibid.

We fully agree that the content, not the medium, is important. That view is consistent with the approach our Supreme Court has taken with respect to other technological advances used in connection with trial court proceedings. See, e.g., State v. Miller, 205 N.J. 109, 122 (2011) (directing that in "responding to a request to review testimony, the trial court's focus should be on the proper controls and limits needed to ensure a fair proceeding, not the medium used to create a record").

Faced with a pre-presentation challenge to use of a PowerPoint in an opening, a court should apply the law governing

opening statements. In some respects, use of PowerPoints has potential to advance the interests of fairness in opening statements because the court may direct removal of prejudicial material before a prosecutor displays a slide to the jury. That opportunity should not be lost.

Watters involved the prosecutor's display of a PowerPoint slide in opening quite similar to the final slide in this opening. The Court considered "whether the State's use of a PowerPoint during opening statement that includes a slide of the defendant's booking photo with the word 'GUILTY' superimposed across it constitutes improper advocacy and undermines the presumption of innocence essential to a fair trial." Watters, supra, 313 P.3d at 245. The Court concluded that it did and reversed the defendant's conviction. Id. at 249.

In Watters, the Court reasoned that the declaration of defendant's guilt displayed by the prosecutor was an impermissible expression of the prosecutor's personal opinion on defendant's guilt at least as, if not more, effective in undermining the presumption of innocence as a prosecutor's oral proclamation of defendant's guilt in opening. Id. at 248.

The Court rejected the State's suggestion that declaring the defendant guilty in opening is just a "different way[] of saying" that the prosecutor will be asking the jury to find

defendant guilty. <u>Ibid.</u> In the Nevada Supreme Court's view, a declaration of the defendant's guilt, unlike an indication that the State will ask the jurors to find the defendant guilty, expresses the prosecutor's opinion. <u>Ibid.</u>

For several reasons, we agree that the difference is more than semantic. A prosecutor's declaration of a defendant's guilt, at best, implies that it is the prosecutor's opinion. Our Supreme Court suggested that a prosecutor may state such a belief if he or she makes it "perfectly plain" that the belief "is based solely on the evidence that has been introduced at trial." <u>Thornton</u>, <u>supra</u>, 38 <u>N.J.</u> at 398. But that cannot be made "perfectly plain" in opening statements when no evidence has been presented.

Our Supreme Court has consistently condemned conduct that invades the exclusive province of the jury to resolve factual disputes, assess credibility and decide whether the State's evidence establishes guilt. <u>State v. McLean</u>, 205 <u>N.J.</u> 438, 463 (2011) (barring expert and lay opinion testimony on ultimate issues, which are the province of the jury); <u>State v. Denofa</u>, 187 <u>N.J.</u> 24, 43 (2006) (declaring resolution of factual disputes about territorial jurisdiction, an element of a crime, to be within the province of the jury not the court); <u>State v. Frisby</u>, 174 <u>N.J.</u> 583, 595 (2002) (noting that expert opinion on a

witness' credibility encroaches upon the province of the jury); State v. Biegenwald, 106 N.J. 13, 44 (1987) (noting that a judge's comments on the evidence "must be designed to avoid unduly influencing or otherwise invading the province of the jury"); see also State v. Bradshaw, 195 N.J. 493, 510 (2008) (directing that "[a] prosecutor should neither argue facts that are not in the record, nor expressly or implicitly vouch for the credibility of the victim"); State v. Feaster, 156 N.J. 1, 81 (1998) (explaining that "[b]ecause it is exclusively within the province of the jury to find fact and evaluate witness credibility, a trial court may not vouch for the credibility of a witness").

It is difficult to conclude that a prosecutor's declaration of the defendant's guilt before the first witness is sworn would not have invaded the province of the jurors. It is quite similar to an investigating officer's giving expert or lay opinion testimony on the ultimate issue. Moreover, such a declaration in opening has the capacity to predispose the jurors to take the prosecutor's view of the evidence "without applying their own independent judgment." Thornton, supra, 38 N.J. at 398.

In Watters, the Court relied, in part, on a decision of the United States Supreme Court, which we also find persuasive,

albeit not controlling, <u>Arizona v. Washington</u>, 434 <u>U.S.</u> 497, 98 <u>S. Ct.</u> 824, 54 <u>L. Ed.</u> 2d 717 (1977). In that case, the Court considered the propriety of a defense counsel's prejudicial opening that led to a declaration of a mistrial. <u>Id.</u> at 511-13, 98 <u>S. Ct.</u> at 833-34, 54 <u>L. Ed.</u> 2d at 731-33. Relying on a case involving prejudicial pre-trial publicity, the Court noted that "[a]n improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal" and to a greater degree than exposure of one juror because "the entire panel may be tainted." <u>Id.</u> at 512, 98 <u>S. Ct.</u> at 834, 54 <u>L. Ed.</u> 2d at 732. The Court described the harm flowing from defense counsel's improper opening in that case as likely capable of preventing the jurors from "'act[ing] with the independence and freedom on the part of each juror requisite to a fair trial of the issue between the parties.'" <u>Ibid.</u> (quoting <u>Simmons v. United States</u>, 142 <u>U.S.</u> 148, 155, 12 <u>S. Ct.</u> 171, 171, 35 <u>L. Ed.</u> 968, 968 (1891)). Threats to and interference with the independence of the jury is the harm that our courts have identified as inherent in conduct that invades the province of the jury.

There is a difference between invasion of the province of a jury occasioned by inadmissible opinion expressed by a testifying witness and a prosecutor's declaration of a

16

defendant's guilt in an opening to the jury. The difference is that a jury generally is given clear direction on the fact that an opening statement is not evidence. Importantly, in <u>Arizona v. Washington</u>, the Court did not rule out the use of a curative instruction as an alternative to a mistrial, as a remedial measure for an improper opening. Indeed, the Court recognized that prejudice from an improper opening may be curable in some circumstances. 434 <u>U.S.</u> at 512-13, 98 <u>S. Ct.</u> at 834, 54 <u>L. Ed.</u> 2d at 732-33.

There is another problem presented by a prosecutor's declaration of a defendant's guilt of the crime charged in the State's opening. Such a declaration delivers a message in conflict with the State's obligation to convince the jury of defendant's guilt by proof of each element of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 <u>U.S.</u> 307, 319, 99 <u>S. Ct.</u> 2781, 2789, 61 <u>L. Ed.</u> 2d 560, 573 (1979). It does that by suggesting the decision has been made. It is more akin to a directive than advocacy, and it has the capacity to leave the jury with a lessened sense of its weighty responsibility as the sole judge of the facts and credibility.

In this case the elements of the crime the State was required to prove included the absence of self-defense. <u>State v. Kelly</u>, 97 <u>N.J.</u> 178, 200 (1984). That determination is fact

sensitive and, in this case, largely based on credibility determinations exclusively in the province of the jury.

We recognize the deference owed to a judge's discretion in matters such as the content of opening statements and use of visual aids. See, e.g., State v. Tilgham, 385 N.J. Super. 45, 53-58 (App. Div.), certif. granted limited to sentence and summarily remanded, 188 N.J. 269 (2006). But the question whether it is permissible for a prosecutor to display a slide containing defendant's picture and text declaring him guilty of the crime charged in an opening statement involves, at least in this case, an application of the law governing opening statements to undisputed facts — the content of the PowerPoint. It is, therefore, a matter on which we owe no deference to the trial judge's determination. State v. Gamble, 218 N.J. 412, 425 (2014). And, we hold a display and oral declaration of defendant's guilt in an opening statement is an egregious interference with defendant's right to a fair trial. Such an interference is highly likely to "substantially prejudice[] the defendant's fundamental right to have a jury fairly evaluate the merits of" his defense. Harris, supra, 181 N.J. at 495.

Egregious misconduct may or may not be sufficient to raise a reasonable doubt about the convictions, depending on the efficacy of the action taken by the judge to eradicate the

apparent prejudice. See, e.g., Dolphy v. State, 707 S.E.2d 56, 57-58 (Ga. 2011) (where the trial court sustained the defense objection to PowerPoint slides declaring "Defendant's Story Is a Lie" and asserting that "People Lie When They Are Guilty" and gave an "immediate corrective action, ordering that the slides be taken down" and an adequate curative instruction); cf. State v. Sucharew, 66 P.3d 59, 64 (Ariz. Ct. App. 2003) (finding no abuse of discretion in allowing a prosecutor to use a PowerPoint that consisted of pictures provided in discovery and later admitted into evidence at trial and descriptive text echoing the prosecutor's oral statements in opening to which there was no objection); but cf. In the matter of Personal Restraint of Glasmann, 286 P.3d 673, 709 (Wash. 2012) (reversing convictions based on the prosecutor's use of a PowerPoint in summation that included a "mug shot" of the defendant with accompanying text declaring him guilty on the ground that "the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice").

In this case, the only curative instruction did not adequately address the prejudice. As noted, the judge overruled defense counsel's objection to use of the PowerPoint in opening and gave no specific instruction to the jurors on how they might

A-4887-11T1

consider the slide in issue, or for that matter any of the other twenty slides.

The court did instruct the jury during the prosecutor's opening, but that instruction followed a different objection. The first sentence of the prosecutor's oral opening was: "Good afternoon. If we had been outside [the liquor store/bar] on a Tuesday night, just about [ten] o'clock, we would have seen that man try to kill two people." Defense counsel objected to the prosecutor speaking about what "we would have seen," but the judge directed the prosecutor to continue.

Defense counsel objected a second time when the prosecutor said, "Defendant stabbed Sean five times. He might have kept going." The judge immediately directed the jury that an opening statement "is not evidence" and continued:

> Ladies and gentlemen, this is not evidence. [O]pening statements are what the lawyers are telling you they intend to prove.
>
> All right. You're not to speculate as to what a [d]efendant might or might not be doing. You have to ultimately, base your determination on what the evidence is. The opening statement, again, is not evidence. It's only what the State intends to prove in the case.

That instruction is not sufficiently pointed to allow us to conclude that the jurors understood it to refer to the displayed and oral declarations of defendant's guilt. Nor are we willing

20

to assume that conduct had no impact on the trial because the jury found defendant not guilty of attempted murder. The jury also had to reject defendant's claim of self-defense to find him guilty of the lesser-included crimes, and the prosecutor's opening declarations of guilt were prejudicial to its consideration of that defense.

We need not decide if the opening statement and PowerPoint were, in themselves, sufficiently prejudicial to require a new trial because there was additional conduct inconsistent with the prosecutor's obligation to try the case fairly.

C.

We turn to consider what can only be described as the prosecutor's antic during the testimony of the State's first witness, Sean Burns. During defense counsel's cross-examination of Sean, the prosecutor climbed into the jury box. When the prosecutor engaged in that bizarre behavior, defendant was assisting his attorney by operating a device used to replay segments of the recording of Sean Burns' statement to the police. Defense counsel was using segments of that recording to point out inconsistencies between Sean's testimony and his out-of-court statements. For reasons not clear on this record, the device was on the prosecutor's table. Defendant, with the judge's prior approval, was seated there.

"For the record," the prosecutor said: "Mr. Rivera is actually set up [at] the State's table using [a] laptop computer hooked onto the projector, using the microphone from the witness stand in order to play the sections, and I believe Mr. Rivera is actually doing that." With that introduction, he advised the judge, "The State is trying to find somewhere to be. So I think just so it's clear on the record."

Indicative of the lack of context of a statement about the clarity of the record, the judge asked, "What's clear?" The prosecutor said, where Sean Burns "was looking."

The prosecutor apparently found somewhere else to be for some time. He did not get into the jury box until cross and redirect were completed. He did that during defense counsel's re-cross. Defense counsel asked Sean whether he had told an officer that he thought defendant was "a sissy." And after that, defense counsel asked his client to set up the video.

The judge addressed the prosecutor as follows: "Mr. Herring, can you please come out of the jury box? I don't want you that close to the jury." As defendant attempted to set up the video, the judge called the attorneys to sidebar, but he spoke to them off the record.

Thereafter, defendant's lawyer told his client that they would play the video later. The prosecutor called his next witness.

The following day defense moved for a mistrial based on the prosecutor's untoward incursion into the jury box. Defense counsel noted that he had not seen the prosecutor get into the jury box but saw him climbing out of it when the judge addressed him. At oral argument in this court, the State confirmed that there is no entrance to the jury box from the area of the courtroom where counsel tables are located.

During his argument on this motion for a mistrial in the trial court, defense counsel acknowledged that he did not know why the prosecutor climbed in but asserted that it was "highly inappropriate." He suggested that the prosecutor could have been "trying to engender [sic] himself to the jury" or "trying to give an indication that he was afraid of [defense counsel's] client." Defense counsel noted, as the judge had implied at the time of the incident, that there were other places the prosecutor could have gone. Defense counsel suggested that the action invaded the province of the jury.

There is no question that the prosecutor invaded the "space" reserved for the jury. In defense counsel's opinion, the conduct was so unheard of and so improper as to warrant a

mistrial. He indicated that it was the "craziest" thing he had ever seen done.

The prosecutor noted that he was just looking for a place to stand and write. He acknowledged that it was "probably not the best place for [him] to stand." He did not, however, offer any other explanation beyond the need for a place to stand and write, which he said he could do inside the jury box.

The judge asked defense counsel to identify the prejudice, but defense counsel could not point to anything more specific. Although the judge recognized the impropriety of the prosecutor's action, he concluded that his prompt response and defense counsel's inability to identify any specific prejudice precluded a mistrial. The judge gave the jury no additional instruction on the point.

It is difficult to identify the prejudice with any precision, but the prosecutor's action was, at best, a distracting antic inconsistent with the seriousness of the prosecutor's obligation to do justice and undoubtedly a distraction to the jurors. The fact that the prosecutor made a "record" in advance, suggests a plan. Although one cannot discern what the individual jurors actually inferred from the behavior, we cannot rule out the likelihood that one or more of

24                                                          A-4887-11T1

them would have inferred what defense counsel suggested — fear of his client.

The conduct could have easily led one or more jurors to infer what the prosecutor allowed to be implied — that defendant was too dangerous or untrustworthy to be near. There is no question that the judge's prompt order directing the prosecutor to move clearly indicated that what the prosecutor did was wrong. It did not, however, address the potential prejudice at all. Thus, we conclude that this antic added to the prejudice engendered by the opening statement.

D.

Defendant's third assertion of prosecutorial misconduct is based on the prosecutor's cross-examination of defendant, which disclosed that defendant had a prior conviction "for resisting arrest by force." Defendant had two prior convictions for crimes of the third degree. One of them was for theft of movable property in 2004, for which he received a sentence of two years' probation. The other was for resisting arrest in 2006, N.J.S.A. 2C:29-2, for which he received a sentence of five years' probation, with credit for time served pending conviction.

Defendant's judgment of conviction for resisting stated that it was for third-degree resisting in violation of "N.J.S.A.

2C:29-2."[3]  N.J.S.A. 2C:29-2 provides two distinct bases for elevating the grade of resisting from a crime of the fourth to a crime of the third degree.  N.J.S.A. 2C:29-2a(3)(a)-(b). Pursuant to paragraph (a), it is a third-degree crime if the person "use[d] or threaten[ed] to use physical force or violence against the law enforcement officer or another."  Pursuant to paragraph (b), the crime is elevated if the person used "any other means to create a substantial risk of causing physical injury to the public servant or another."

Quite obviously, one can create a substantial risk of physical injury by means other than force.  Because defendant's judgment did not specify which paragraph applied to him, it did not provide any basis for the prosecutor to ask defendant about resisting "by force."

In addition to the lack of a factual basis for the question, the prosecutor's reference to the crime underlying the conviction violated a ruling made by the judge at a hearing outside the presence of the jury on the admissibility of defendant's prior conviction to impeach his credibility. N.J.R.E. 104; N.J.R.E. 609.  At the conclusion of that hearing, the judge granted the prosecutor's motion to use defendant's

---

[3] That judgment is not included in the record on appeal, but it was discussed on the record at trial.

prior convictions to impeach defendant. But the judge also granted defense counsel's motion for sanitization of defendant's convictions — that is a ruling precluding reference to the underlying crimes in accordance with State v. Brunson, 132 N.J. 377, 380 (1993).

The judge's ruling under Brunson was not ambiguous. Clarifying the scope of defendant's request, he asked defense counsel whether he wanted the jury told that defendant "was convicted of two separate third-degree crimes." Defense counsel confirmed the judge's understanding and added, "and sentenced to probation." The judge indicated that the prosecutor could use the "conviction and the sentence and the date of the conviction" for the jury to consider "as bearing on your credibility" but could not use the convictions to argue defendant's "predisposition to commit a crime."

At that point, the prosecutor asked if he could mention that defendant was on probation when he committed the crime underlying his second prior conviction. The judge said, "Certainly, the dates are admissible and the length of probation is admissible and the degree of the crime is admissible."

If there were any room for confusion about the ruling on the prosecutor's part, Brunson forecloses it. In Brunson, the Court held

27                                                    A-4887-11T1

that in those cases in which a testifying defendant previously has been convicted of a crime that is the same or similar to the offense charged, the State may introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted. That method of impeachment will insure that a prior offender does not appear to the jury as a citizen of unassailable veracity and simultaneously will protect a defendant against the risk of impermissible use by the jury of prior-conviction evidence.

[132 N.J. at 391-92.]

The Court elaborated:

To impeach the credibility of a testifying defendant, the State may introduce into evidence only the number, degree, and date of the defendant's prior similar convictions. When a defendant has multiple prior convictions, some of which are similar to the charged offense and some of which are dissimilar, the State may introduce evidence only of the date and degree of crime of all of the defendant's prior convictions, but cannot specify the nature of the offenses. Alternatively, the State may introduce without limitation evidence of only the dissimilar convictions. . . .

[132 N.J. at 394.]

In requiring the sanitization of all prior convictions presented by the prosecutor, even when only one of them is for a crime "similar" to the one at issue in the trial, the Supreme Court explained that its purpose was "to avoid the speculation

that inevitably would occur if evidence were introduced to prove the theft conviction and the convictions of the unidentified crimes." Id. at 393.

Defense counsel was the first to violate the judge's order and Brunson's rule precluding reference to any crime underlying a prior conviction where one is similar. During his direct examination of his client, the lawyer referred to defendant's first conviction being a conviction for theft. The State did not object to the reference or seek the judge's guidance on how to proceed. Instead, the next day, during his cross-examination of defendant and without seeking leave, the prosecutor posed the offending question. He asked defendant, "In March of 2006, you were convicted of resisting arrest by force. Right?" (emphasis added). Defendant responded: "I don't know by force. I know it was a resisting arrest, yes."

Defense counsel asked for a sidebar. Referencing the judge's ruling on Brunson, he admitted that he had "inadvertently brought out the fact that there was a theft." The judge said, "I did sanitize it."

Defense counsel then pointed out that resisting arrest and the crimes at issue were crimes involving violence, and the judge again observed that the prosecutor had said "Force." Defense counsel argued that only a mistrial could cure the

prejudice given his client's claim of self-defense and the prosecutor's disregard of the judge's ruling.

The judge called on the prosecutor for a response, and he said: "[I] apologize if I misunderstood the [c]ourt's ruling.  I believe the [c]ourt sanitized everything except the charge, the level of degree, the date of conviction."

The judge recessed and returned to rule as follows:

> Despite my [o]rder, the [p]rosecutor revealed in his question to the jury the [d]efendant was convicted of a resisting arrest and inaccurate word by "force."
>
> What I intend to do is to tell the jury that question was inaccurate and improper and that I will instruct the jury that they're not to conclude the fact that the [d]efendant committed a crime, any crime, that he's more likely to have committed the crime charged here simply because he committed a crime on another occasion.  And the jury has a right to consider whether a person who has previously failed to comply with society's rules and demonstrated through criminal convictions would be more likely to lie on the witness stand than a person who was never convicted of any crime.

The judge's characterization of the prosecutor's use of the phrase "by force" as "inaccurate and improper" was well-warranted.  It was inaccurate because, as noted above, the judgment did not indicate that defendant resisted an arrest by force and the State had no evidence other than the judgment.  It was "improper" because of the judge's unambiguous ruling

sanitizing defendant's convictions and the rule announced in Brunson.

Nevertheless, the prosecutor said, "I did not understand that to be the [c]ourt's ruling." He then read from his own notes, which included the names of the crime but not the phrase by force.

The judge asked the prosecutor, "If I grant the application to sanitize the conviction, what was I doing if you can bring out the nature of the conviction?" Instead of answering the judge's question, the prosecutor pointed to defense counsel's reference to theft on direct examination of his client. He said he had concluded that defense counsel had, "either for strategic or tactical reasons[,] overlooked the second nature of the conviction [sic[4]]. As a result, I stomped onto it." (emphasis added). This is another instance of egregious misconduct.

The judge denied a mistrial concluding that a curative instruction would eradicate the prejudice. When the jury returned and defendant resumed his seat in the witness box, the judge gave this instruction:

> All right. Ladies and gentlemen,
> before we broke, the [p]rosecutor was asking
> the witness questions, and he was asking the

---

[4] Presumably, the prosecutor meant to say the nature of the second conviction.

witness questions about two prior convictions. The [p]rosecutor's questions of this witness were not only improper, but they were inaccurate.

All right? Now, you can use evidence, ladies and gentlemen, evidence of a crime in determining the credibility or believability of the [d]efendant's testimony. In the State of New Jersey there are four degrees of crimes: First, second, third and fourth. First degree being the most serious, fourth degree being the least serious.

In this case, the [p]rosecutor, and I think even [d]efense [c]ounsel elicited that this [d]efendant had been convicted in the past of two third-degree crimes.

Now, you cannot conclude, ladies and gentlemen, that the [d]efendant committed the crime charged in this case or is more likely to have committed the crime charged in this case simply because he committed a crime on another occasion. You, as the jury, have a right to consider whether a person who has been previously — who has previously failed to comply with society's rules as demonstrated through a criminal conviction would have been more likely to ignore the oath requiring truthfulness on the witness stand than a person who's never been convicted of any crime.

You can consider in determining this issue the nature and degree of the prior conviction and when they occurred. Our law permits a conviction to be received in evidence only for the purpose of affecting the credibility of the [d]efendant and not for any other purpose.

So if you infer from the [p]rosecutor's question that this [d]efendant is more likely to have committed this offense merely because he was convicted of another crime,

32

you are not to make that inference.  Do you understand that?

Thank you.  Let's go on.

Because the cumulative impact of the prosecutor's conduct requires reversal, there is no reason to address defendant's claim of error in the denial of a mistrial.[5]  With respect to cumulative misconduct, the question is whether the judge's curative instruction was adequate.

This curative instruction was "firm" and "accomplished without delay" as it should be where evidence of a defendant's propensity for conduct similar to the conduct charged is admitted.  State v. Vallejo, 198 N.J. 122, 134-35 (2009).  The problem with this curative instruction is that the judge was not sufficiently specific to give "clear" guidance.  Ibid.  The Supreme "Court has consistently stressed the importance of immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant

---

[5] "The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court" and subject to deferential review. State v. Harvey, 151 N.J. 117, 205 (1997), cert. denied, 528 U.S. 1085, 120 S. Ct. 811, 145 L. Ed. 2d 683 (2000).  It is an extraordinary remedy and not employed where there is "an appropriate alternative course of action." State v. Allah, 170 N.J. 269, 281 (2002).  It is worth noting that one of the Supreme Court's reasons requiring sanitization of similar convictions was its determination that the inherent prejudice was "unlikely to be cured by a limiting instruction." Brunson, supra, 132 N.J. at 391.

from inadmissible evidence that has seeped into a trial." Id. at 135 (emphasis added); see id. at 135-36 (citing and discussing the cases). What was required in this circumstance was an instruction explaining precisely the permitted and prohibited uses of the defendant's prior convictions with reference to resisting and force. See State v. Marrero, 148 N.J. 469, 495 (1997) (discussing the required instruction where other crimes evidence is deemed admissible for a limited purpose pursuant to N.J.R.E. 404(b)).

In this case, the judge did not tell the jury he was talking about the prosecutor's reference to a conviction for resisting arrest by force, which defendant had admitted, in part, in response to the prosecutor's improper question. Moreover, the judge did not direct the jury that it could not give any consideration or weight to the prosecutor's characterization of defendant's conduct as resisting arrest or as involving "force" for any purpose or in deciding any question in the case.

"Because the jury instruction was inadequate, we have no alternative but to assume that the jurors" used the information as evidence of defendant's propensity for criminal use of force — a highly prejudicial consequence in this case involving a claim of self-defense. Vallejo, supra, 198 N.J. at 137. To be

clear, if not concise, the problem with the instruction is that the judge did not tell the jurors not to consider, in any way, the crime underlying defendant's conviction as stated by the prosecutor — resisting by force. Moreover, having told the jurors that what the prosecutor said about that crime was inaccurate, the judge's instruction left them to speculate about what defendant did to warrant that conviction, a type of prejudice the Court recognized in Brunson.

Because defense counsel had a role in the error and because the prosecutor seemed to believe that defense counsel's erroneous reference to theft gave him a right to "stomp on it," we pause to stress that the prosecutor was wrong. In Brunson, the Court indicated that "[a] defendant may choose to waive the protection afforded by" the Court's rule of sanitization. 132 N.J. at 392. We do not understand the Court's reference to waiver as assigning the prosecutor any authority to decide whether a defendant has waived that protection. The judge has the discretion and obligation to apply Brunson so as "to exclude evidence the prejudicial effect of which seriously compromises a defendant's right to a fair trial." 132 N.J. at 400 (Handler, J., concurring). It is not assigned to the prosecutor. Even if it were, under Brunson disclosure of similar crimes is not one

of the options available to the prosecutor.  This instance of misconduct adds to the prejudice.

                                  E.

The prosecutor further added to the cumulative impact of his misconduct in summation.  It is improper for a prosecutor to express his personal opinion on the veracity of any witness.  State v. Marshall, 123 N.J. 1, 154 (1991).  But, referring to Michael Burns, the prosecutor declared, "[T]he reality is he's not lying."  The prosecutor also said, "[t]he defendant is lying to you."  Arguably, the assertion about Michael was sufficiently tied to the evidence, but the more prejudicial assertion about defendant lying was not supported by the evidence the prosecutor referenced — blood on the door frame.  As we understand the testimony, the blood was never tested and, for that reason that evidence did not support the prosecutor's claim that defendant was lying to the jury.

The prosecutor also made improper use of evidence admitted for the limited purpose of explaining why the officers took certain steps in the investigation.  He used the officer's testimony to bolster the credibility of Michael Burns.  Text on two of the PowerPoint slides used in opening and summation makes the same use of the officers' testimony by repeating what Michael told them.

In addition, the PowerPoint the prosecutor used in summations included statements about the law of self-defense that were so oversimplified as to be misleading. Worse, those oversimplifications provided appealingly easy "take aways," as those schooled in PowerPoint presentations aptly put it.

The first four of the five final slides of the PowerPoint used in summation were as follows: the first, a definition of attempted murder with "GUILTY" superimposed in typeface that obscures the words; the second, a slide with a caption asserting "CANNOT BRING A KNIFE TO A FIST FIGHT" and with text purportedly reciting the law on the use of deadly force that is largely obscured by superimposed text in a red box that advises "NO SELF-DEFENSE TO USE DEADLY FORCE"; the third, a slide with a caption asserting "CANNOT KILL AS FIRST CHOICE," with text largely obscured by superimposed text in a red box that repeats "NO SELF-DEFENSE TO USE DEADLY FORCE"; and a slide with boxes of text that cannot be read because they are obscured by one superimposed word — "GUILTY" - in typeface that is large enough to essentially fill the slide.

Without question, the oversimplifications were prejudicial to a claim of self-defense by a defendant who claimed to have taken his work knife from his pocket to defend against what he

37 <span>A-4887-11T1</span>

claimed he thought was an imminent and life-threatening attack by the Burns brothers.

Finally, returning to his initial error in his opening, the prosecutor closed his summation by saying: "The [d]efendant is guilty of trying to kill Sean and Michael Burns. Hold him responsible for what he did." The final slide in the summation-PowerPoint is the same as the final slide in the opening — defendant's photograph and text declaring "Defendant <u>GUILTY OF:</u> <u>ATTEMPTED</u> <u>MURDER</u>."

We recognize that the judge instructed the jury on law and gave an appropriate instruction directing that what he said about the law was controlling. In addition, the judge directed the jurors to rely on their recollection of the evidence, not the summations of counsel. But the sheer quantity and variety of highly prejudicial remarks, visual displays and a courtroom antic, give us reason to have serious doubt about the jurors' capacity to follow those instructions. <u>See</u> <u>State v. Manley</u>, 54 <u>N.J.</u> 259, 270 (1969) (discussing courts' need to rely on jurors' capacity to follow instructions); <u>but cf.</u> <u>State v. Winter</u>, 96 <u>N.J.</u> 640, 649 (1984) (noting that "[t]he record lends no support to the suggestion that the jurors were unable to comply with the court's instruction"); <u>State v. Catlow</u>, 206 <u>N.J. Super.</u> 186, 193 (App. Div. 1985) (noting that the record revealed "no reason to

believe that the jury was unable to follow the court's sharp and complete curative instruction"), certif. denied, 103 N.J. 465 (1986) (quoted in Vallejo, supra, 198 N.J. at 135).

F.

Despite the judge's efforts, the cumulative impact of the prosecutor's misconduct leaves us with significant doubt that defendant received a fair trial. Accordingly, we reverse his convictions and remand for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION