NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0434-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

DESHAUN J. WILLIAMS,

 Defendant-Appellant.

____________________________

 Submitted April 25, 2017 – Decided June 8, 2017

 Before Judges Reisner, Koblitz and Mayer.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Indictment
 No. 14-09-2178.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Daniel S. Rockoff, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Carolyn A. Murray, Acting Essex County
 Prosecutor, attorney for respondent (LeeAnn
 Cunningham, Special Deputy Attorney General/
 Acting Assistant Prosecutor, of counsel and
 on the brief).
PER CURIAM

 Defendant DeShaun Williams appeals from his conviction for

first-degree robbery, N.J.S.A. 2C:15-1, disorderly persons simple

assault, N.J.S.A. 2C:12-1(a), fourth-degree unlawful possession

of a weapon, N.J.S.A. 2C:39-5(d), third-degree possession of a

weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and third-

degree witness tampering, N.J.S.A. 2C:28-5(a)(1).1

 On this appeal, defendant presents the following arguments:

 POINT I

 THE PROSECUTOR'S IMPROPER TACTICS UNFAIRLY
 BOLSTERED THE CREDIBILITY OF THE SOLE
 EYEWITNESS IDENTIFICATION OF THE PERPETRATOR.
 (Not Raised Below)

 In Summation, The Prosecution Improperly
 Directed Jurors To Stare At Each Other While
 Imagining Themselves Being Robbed, Then Urged
 Them To Use Their Experiences From This
 Emotionally-Charged, Non-Record, Flawed
 Simulation To Assess The Credibility Of The
 Real Victim's Identification Of The
 Perpetrator

 The Prosecution Improperly Bolstered The
 Victim's Identification When He Argued That
 Time Slowed Down For Her, She Experienced
 Elevated Awareness, And She Constantly Relived
 The Attack

1
 Defendant was sentenced to an aggregate term of twelve years,
subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 for the
robbery conviction, with a consecutive term of three years for
witness tampering. The other sentences were imposed concurrent.

 2 A-0434-15T4
 The Prosecution Improperly Emphasized The
 Impact Of The Robbery On The Victim’s Life,
 Despite Its Utter Irrelevance

 The Prosecution Unnecessarily Denigrated
 Defense Counsel’s Attempts to Cross-Examine
 The Victim On Her Identification

 POINT II

 THE COURT ERRED BY NOT OFFERING ANY GUIDANCE
 TO THE JURY ON THE MEANING OF THE PHRASE "TO
 TESTIFY FALSELY" AFTER THE JURY SENT A NOTE
 TO THE COURT EXPRESSING ITS CONFUSION ABOUT
 THIS ESSENTIAL ELEMENT OF THE TAMPERING CHARGE

 POINT III

 COUNSEL FOR WILLIAMS, WHO IS AT LEAST SIX FEET
 TALL, REPEATEDLY TRIED TO SHARE WITH THE JURY
 AN INCONSONANT STATEMENT THAT THE PERPETRATOR
 WAS FIVE FEET, FOUR INCHES TALL. THE COURT
 ACCEDED TO THE PROSECUTOR’S HEARSAY
 OBJECTIONS, AND BARRED DEFENSE COUNSEL FROM
 SHARING THIS STATEMENT WITH THE JURY. BUT THE
 STATEMENT SHOULD HAVE BEEN ADMITTED AS
 NONHEARSAY, BECAUSE IT WAS NOT BEING OFFERED
 FOR THE TRUTH. IN ADDITION, THE DOCTRINE OF
 COMPLETENESS COMPELLED THE STATEMENT’S
 ADMISSION, EVEN IF IT WOULD HAVE OTHERWISE
 BEEN INADMISSIBLE. N.J.R.E. 106

 We agree with defendant that the trial was infected with

prejudicial errors, requiring that we reverse the conviction and

remand for a retrial.

 I

 The essential facts concerning the crime were largely

undisputed. We will summarize them briefly here, and discuss

 3 A-0434-15T4
additional pertinent trial developments when we address the legal

issues.

 The victim, a home health aide, testified that she was robbed

right after leaving a client's home at about 11:00 a.m. on the

morning of March 24, 2014. According to the victim, the client's

son accompanied her as she left the house but left quickly

thereafter. As the son departed, a slender young black man

approached the victim, nicked her hand with a knife, and then

robbed her while holding the knife to her chest. The robber was

wearing a black hat that covered his hair, leaving only his face

visible. The victim testified that the robbery lasted perhaps

five minutes and that she spent two minutes looking at the robber's

face. She spent the rest of the time struggling unsuccessfully

to comply with his demand that she remove her wedding ring. She

testified that the robber fled after a bus pulled up nearby.

 Within two hours after the robbery, the police showed the

victim two books of photographs. In the second book, she picked

out defendant's photo and identified him as the robber. She also

identified defendant in court as being the robber. There were no

other witnesses to the robbery. Defendant was arrested several

weeks after the crime occurred. He insisted he was innocent, and

there was no evidence connecting him to the robbery, other than

the victim's identification.

 4 A-0434-15T4
 II

 In addressing defendant's appellate arguments, we conclude

that the trial court erred in excluding evidence that the victim

initially described the robber as five feet, four inches tall.

The victim's statement, contained in a police incident report, was

not admissible for its truth as to the robber's actual height.

See N.J.R.E. 801(c); N.J.R.E. 802. However, it was admissible for

other purposes. Because defendant was at least six feet tall2,

the victim's description, which was documented in the incident

report, was relevant to the thoroughness of the police

investigation and to the victim's credibility.3 See State v.

James, 144 N.J. 538, 561-62 (1996) (recognizing that problems with

a victim's identification can be critical to the defense). It was

also relevant to the credibility of defendant's testimony about

the witness tampering charge. Because the victim's statement

about the robber's height was contained in a public record,

2
 The booking report lists his height as six feet, while the arrest
report lists his height as six feet, one inch.
3
 In the final charge to the jury, the judge gave the identification
instructions mandated in State v. Henderson, 208 N.J. 208 (2011),
including an instruction to consider the accuracy of the witness's
description of the perpetrator before she identified the
defendant, and whether that description matched the person she
later identified. Absent the inconsistent information on the
police report, however, the jury had no context in which to
consider those factors.

 5 A-0434-15T4
N.J.R.E. 803(c)(8), and because the fact that she made the

statement was relevant, it was admissible for the three purposes

we have just described. See N.J.R.E. 805 (addressing the

admissibility of included hearsay).

 We turn to defendant's arguments concerning witness

tampering. Defendant was charged with third-degree witness

tampering, which does not require proof of force or threats against

the witness. Rather it only requires proof that defendant knew

that an "official proceeding or investigation" was pending, and

"knowingly engage[d] in conduct which a reasonable person would

believe would cause a witness or informant to . . . [t]estify or

inform falsely." N.J.S.A. 2C:28-5(a)(1).

 The tampering charge was based on a letter defendant, who was

not yet represented by counsel, sent to the victim. Along with

the letter, defendant enclosed a copy of the police incident report

listing the robber's height as five feet four inches, and the

arrest report documenting that defendant was six feet, one inch

tall. In the letter, defendant sought to portray himself as a

hard-working, good person who was the victim of misidentification,

and he asked the victim to look at the incident report and the

arrest report attached to his letter and consider whether she had

correctly identified him. The charge was also based on phone

calls that defendant's relatives made to the victim, begging her

 6 A-0434-15T4
to meet with them because, as they expressed it, they believed

defendant was a victim of misidentification. However, the jury

only saw defendant's letter to the victim, and did not see the

incident report or hear a description of its relevant content,

which would have put defendant's letter to the victim in context.

We agree with defendant that the additional information was not

excludable hearsay and should also have been admitted under the

doctrine of completeness. See N.J.R.E. 106; Alves v. Rosenberg,

400 N.J. Super. 553, 562 (App. Div. 2008); State v. Underwood, 286

N.J. Super. 129, 140 (App. Div. 1995).

 Due to the judge's strong admonition to defense counsel

precluding her from eliciting information about the police report,

defense counsel could not have her client explain why he believed

the victim had made a mistaken identification of him.4 The police

report, with its description of the robber as five feet four inches

tall, when defendant was at least six feet tall, was central to

the defense against witness tampering - i.e., that defendant had

a good faith reason to contact the victim, even if he should not

4
 The first time this issue arose, it would have been the better
practice for the judge to allow the attorneys to come to sidebar
to argue the prosecutor's objection, instead of immediately
sustaining the objection. That would have given defense counsel
an opportunity to explain why the information was admissible and
for what purposes.

 7 A-0434-15T4
have done so, and was only trying to get her to truthfully

acknowledge a mistake.

 Further compounding the prejudice to the defense, during his

summation the prosecutor exploited the lack of that evidence,

criticizing defendant for sending the letter to the victim without

proof that he had been misidentified. He argued: "Why would you

need to play on [the victim's] emotions if you weren't the person

who did it? Why wouldn't you show them that you're not the person

who did it?" The prosecutor also told the jury that if defendant

really wanted to convince the victim he was innocent, "[h]e could

have pulled out a thousand documents to corroborate anything he's

saying." That was fundamentally unfair because, as the prosecutor

well knew, the defense had been precluded from presenting the

evidence of misidentification.5

 Because the excluded information bore on defendant's

credibility as well as his substantive defense, its improper

exclusion was harmful error and warrants reversal of the witness

tampering conviction. See State v. Garron, 177 N.J. 147, 168-69

(2003), cert. denied, N.J. v. Garron, 540 U.S. 1160, 124 S. Ct.

1169, 157 L. Ed. 2d 1204 (2004). Additionally, because a jury may

5
 During deliberations, the jury asked a question about the witness
tampering charge, which suggested that they were having some
difficulty reaching a verdict on that issue. This further leads
us to conclude that this trial error was prejudicial.

 8 A-0434-15T4
fairly view witness tampering as evidence of a defendant's guilt

on the underlying offenses, we conclude that this trial error,

together with the additional errors discussed below, warrants

reversal of defendant's conviction for robbery and the other

associated offenses.

 We next address defendant's argument that the prosecutor

improperly caused the jurors to engage in a misleading

demonstration during summation. This was the context. The

prosecutor argued to the jurors that the victim must have been

able to identify defendant accurately because she was looking at

him for two minutes during the robbery. In order to demonstrate

that point, during his summation, the prosecutor directed the

jurors to form pairs, in which each pair of two jurors would stare

at each other for two minutes while the prosecutor made summation

remarks. He then asked them to conclude that, after staring at

each other for two minutes, they would recall each other's faces,

and asked them to apply that conclusion to the victim's

identification as well.

 We agree with defendant, that this demonstration was

misleading. There is no fair analogy between staring at a person

with whom one has become familiar over several days of jury

service, and staring at a complete stranger holding a knife.

Where, as here, the victim's identification of defendant was a

 9 A-0434-15T4
crucial issue, it was plain error to allow the prosecutor to have

the jurors engage in this misleading exercise. See State v.

Rivera, 437 N.J. Super. 434, 455-56 (App. Div. 2014). The error

was compounded by the prosecutor's statement to the jury,

unsupported by any testimony, that while the victim was looking

at the robber, time "slowed down." See State v. Bradshaw, 195

N.J. 493, 510 (2008).

 For completeness and for the guidance of the trial court and

counsel, we also note additional errors which should not be

repeated at the retrial. Defendant had no prior convictions and

therefore was able to testify without concern that the jury would

hear highly prejudicial information about any prior brushes with

the law. See N.J.R.E. 404(b); State v. Cofield, 127 N.J. 328,

340-41 (1992). However, for reasons we cannot comprehend, defense

counsel unnecessarily mentioned in front of the jury the fact that

her client's photo, which was in a photo book shown to the victim,

came from a group of prior "offenders."

 And, although her client freely admitted that he was in New

Jersey on March 24, 2014, the date the robbery was committed,

counsel elicited from defendant the fact that he was arrested and

"incarcerated" in New Jersey in 2013. She presented this testimony

ostensibly for the purpose of impeaching a prosecution witness's

marginally relevant testimony concerning defendant's whereabouts

 10 A-0434-15T4
in 2013. Moreover, counsel did not even attempt to mitigate the

prejudice from that information by eliciting from her client the

fact that his 2013 arrest did not result in a conviction. The

judge gave the jury an instruction in the final charge, concerning

the limited purpose for which they could consider defendant's

prior arrest and incarceration. However, there did not appear to

be any rational strategic basis to place this highly prejudicial

information before the jury in the first place.

 Finally, in his testimony, the officer who showed the victim

the books of photos testified to his opinion that an identification

made within two hours of a crime was more likely to be reliable.

The officer was not qualified as an expert witness, and that

improper testimony should not be repeated at the retrial.

 In conclusion, based on our careful consideration of the

trial record, we are persuaded that due to cumulative error,

defendant did not receive a fair trial. R. 2:10-2; State v.

Weaver, 219 N.J. 131, 155 (2014); Rivera, supra, 437 N.J. Super.

at 444-45. Because the case hinged on a contested eyewitness

identification and on witness credibility, we cannot conclude that

the errors were harmless. See State v. J.R., 227 N.J. 393, 417

 11 A-0434-15T4
(2017). Accordingly, we reverse defendant's conviction, vacate

the sentence, and remand for a new trial.6

 Reversed and remanded.

6
 In light of our disposition of this appeal, we do not address
defendant's additional appellate arguments.

 12 A-0434-15T4