**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5552-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY S. CLARK,

     Defendant-Appellant.

_____

> Argued June 5, 2019 – Decided June 26, 2019
>
> Before Judges Nugent and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-05-1172.
>
> Lauren Stephanie Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Lauren Stephanie Michaels, of counsel and on the brief).
>
> Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Caroline C. Galda, of counsel and on the brief).

PER CURIAM

Defendant Anthony S. Clark appeals from a judgment of conviction for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a); third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1); and second-degree possession of a CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1(a). He also challenges his sentence. We affirm.

We take the following facts from the record. Late in evening of January 22, 2015, West Orange Police Department detectives Wilfred Jiroux and Rory Kearns were patrolling westbound on Park Avenue. They observed a two-door black Acura in front of them pull over to the right-hand side of the roadway without signaling. The officers pulled alongside the car, and noticed the driver's side rear window was shattered and had pry marks around the window frame. The officers stopped the vehicle on the northbound side of Main Street near the intersection of Park Avenue.

As he approached the vehicle, Jiroux noted the scent of "raw marijuana" emanating from the car. He asked defendant, the vehicle's sole occupant, for his license and vehicle registration. The registration showed the car was registered

A-5552-16T4

to defendant's sister, Tiesha Clark.[1]  Defendant signed a consent form permitting officers to search his person and the vehicle.

The vehicle search revealed a switch concealed in the dashboard vent on the passenger side of the vehicle, unusual wiring on the floorboard, and modified steel plates on the driver and passenger sides of the vehicle's backseat.  A K-9 unit drug-sniffing dog alerted to the area of the steel panel on the passenger side rear seat.  A weapon-sniffing dog also alerted to the car.  Defendant was arrested and the vehicle was impounded.

A search of defendant revealed $3100 in cash, consisting of three $100 bills, ten $50 bills, one-hundred and thirteen $20 bills, three $10 bills, one $5 bill, and five $1 bills.  Officers opened the steel compartment on the rear passenger side of the vehicle with a crow bar and recovered nine bags of crack cocaine, and ten bags of powder cocaine weighing approximately thirteen grams. The bags were individually wrapped and stamped with green dollar signs. Officers also recovered mail belonging to defendant from the visor and the backseat of the car.

---

[1]  We utilize Tiesha's first name because she shares a common surname with defendant.  We intend no disrespect.

Tiesha told police the car was a birthday gift from her grandfather. She stated defendant drove it on a regular basis.

In May 2015, a grand jury indicted defendant on the three aforementioned counts. On March 3, 2016, Andre Thompson, Tiesha's on-and-off boyfriend, submitted an affidavit claiming the car and the cocaine belonged to him. Thompson appeared before a grand jury in October 2016, which declined to indict him.

Defendant's case was tried before a jury. The State adduced the testimony of Jiroux. It also called Sergeant Reginald Holloway from the Essex County Prosecutor's Office Narcotics Task Force, who was qualified as an expert in street-level narcotics without objection. He testified regarding the packaging and marking of the drugs, the use of concealment traps in vehicles, and the significance of large sums of cash consisting of bills of mostly smaller denominations in drug distribution cases. He stated the number of $20 bills was significant and consistent with "illegal distribution." He explained the steel panels in the vehicle were compartments typically utilized to conceal contraband and the money sign stamp on the bags was a type of trademark used by drug distributors.

The State also called Leonard Lepore, the West Orange Municipal Engineer. He explained the methodology used to determine that defendant's car was within five-hundred feet of Lafayette Park. He testified the area in front of 137 Main Street, West Orange, where defendant's car was stopped, was within five-hundred feet of Lafayette Park, which is located "at the southwest corner of the intersection of Main Street and Park Avenue[.]" Lepore was not cross-examined.

Tiesha testified for the defense. She claimed she lied to police when she stated the car was a gift from her grandfather and that defendant regularly used it. She claimed the car belonged to Thompson, and that he purchased it and drove it regularly. As a result of her testimony, the trial judge conducted a Gross[2] hearing and determined the State could use her prior inconsistent statement pursuant to N.J.R.E. 803(a)(1)(A) as material evidence.

Thompson also testified for the defense. He claimed he bought the car himself and asked Tiesha to register it in her name because he did not have a driver's license. He claimed the seller of the vehicle volunteered that it was equipped with a trap and showed him how to operate it. Thompson testified that at the time of defendant's arrest, the cocaine was in the driver's side trap. When

---

[2] State v. Gross, 121 N.J. 1, 15-17 (1990).

the State confronted him with evidence the drugs had been found in the passenger side trap only, Thompson claimed the police removed the drugs from the driver's side without logging it into evidence.

Thompson also claimed there were approximately fifteen to twenty bags of cocaine in each trap, divided equally in powder and crack cocaine form. His testimony contradicted his grand jury testimony, in which he stated there were a total of six or seven bags of cocaine in the vehicle. Thompson also told the grand jury the packages contained no markings, but testified at trial they were marked with green dollar signs.

The prosecutor addressed Thompson's testimony during the State's summation:

> [PROSECUTOR:] I want to break this down by dates. The affidavit, March 3rd, 201[6]. Andre Thompson, "My car. My trap. My drugs." He was never charged with any crime on March 3rd, 201[6]. October 19th, when . . . Thompson testifies in a prior legal proceeding . . . "My car. My drugs. My traps." The Essex County Prosecutor's Office never charged him with a crime.
>
> He testified yesterday, in front of all of you, that's the third time he's under oath. "My car. My drugs. My traps." [H]e is still not charged with any crime. Now, why? I think we all know why. How many times did he get on that stand and lie to all of you yesterday? Not once, not twice, it was at least a dozen times. That car isn't his. Doesn't know anything about anything. That's why he's not charged. There's a reason why he's not

A-5552-16T4

charged. And ladies and gentlemen, I submit that . . . Thompson knows he will not be charged for the crime. And remember, . . . the defendant is like a brother. He's like family. So if . . . Thompson knows he's not going to get charged, then he might as well just come in and keep[] . . . saying the same lines. Make . . . up the same story to try and help out his brother and the family. . . .

[DEFENSE COUNSEL]: Judge . . . I'm going to object to, "He knows he's not getting charged." How does he know that from the evidence in this case?

[PROSECUTOR]: Judge, it's a reasonable inference based upon —

THE COURT: It's . . .

[PROSECUTOR]: — the evidence in this case.

THE COURT: — an inference upon what he just established on not being charged earlier. It's for the jury to accept it, or to reject it.

[PROSECUTOR]: He knows he's not being charged because he's testified three times under oath, and he's never been charged. Because everything that comes out of his mouth is a bold faced lie.

Now, I want to get into these lies. It's . . . Thompson's car, it's his trap, it's his drugs. Remember when he testified about purchasing that car with the trap? He goes, "I'm driving, I see this black Acura." And I go, "Well, how did you know there was a trap in it?" His response was, "The guy knew what I was about." So you're telling me that someone who's selling this black Acura, sees . . . Thompson. "Oh, Mr. Thompson. You look like a drug dealer. By the way, there's two traps in the back seat that come along with

this black Acura. You know, you hit the lottery today. You know, you look like a drug dealer, and it just so happens I have two traps in the back of my car. You know, have a good day, thanks for the money." He testified to that.

The exterior of the vehicle. Remember I was . . . asking . . . Thompson about the exterior of the vehicle. I go, "Did you — do you remember anything out of the ordinary about the outside of the vehicle?" I was referring to . . . his broken windshield. He had no idea what I was talking about, until I showed him a picture. And then his response was, "Oh yeah, . . . I locked myself out of the car. I broke the window to get my key to get back in the car." Well, the window is still intact. So if he was locked out, clearly he didn't get his key. What did he think, he'd just punch the windshield to get his key out? It's a lie. He saw the picture, he made up a lie right on the stand.

How about the inside of the car, referring to the questions about the actual trap. He said, . . . "It was like, you just pick it up. It was as simple as picking it up." That's what he said about the trap. Now, at that prior legal proceeding when . . . Thompson testified on October 19th, 2016, he didn't mention the switch. He didn't mention the wiring for that trap. . . .

Now, let's talk about the questions that were posed in regards to the crack cocaine. . . . Thompson yesterday goes, "The crack cocaine was in the rear driver's side." . . . And pretty much the only consistent thing that he said with his prior testimony on October 19th, he said the same thing, driver side. So six months ago it's driver side, yesterday driver side compartment. . . . Top portion. That is the . . . rear passenger side compartment. And . . . the rear

passenger side compartment [is] where the drugs were found. . . .

So while . . . Thompson was consistent with what side the drugs were on, he's wrong. He doesn't know where the drugs are located in his own car. Doesn't that bother anyone? It gets better. I go, "What was the quantity of the drugs in your car?" He goes, "[fifteen] to [twenty] bags on the passenger side. [Fifteen] to [twenty] bags on the driver side." . . . And then I confronted him with his testimony on October 19th, and I go, "Didn't you . . . testify on October 19th, that it was six or seven bags?" He said, "Yeah."

. . . "The cops must have stole[n] my crack cocaine." You can't make this stuff up. . . . And ladies and gentlemen, I submit if the officers arrest the defendant with possession of crack cocaine, why would they take crack cocaine away from him? That helps him out. . . . That doesn't make any sense. . . .

Taking it a step even [further], . . . Thompson testified that he had [thirteen] grams of crack cocaine in his car. Well, the police stole your crack cocaine, wouldn't it be more than [thirteen] grams? He couldn't even follow up with his own lie. If he followed up . . . on his own lie, he would have said, "I have [thirteen] grams. The officers stole crack cocaine, so it's actually . . . less. . . . It should have been more because crack cocaine was stolen." He didn't say that. He said [thirteen] grams. The point is, he lied. He couldn't even follow up on his lie. . . .

. . . Yesterday, . . . Thompson testified that, "Yes, there were green dollar signs on my crack cocaine." And then I presented him with his grand jury testimony six months ago. And I go, "Isn't it fact that six months ago you said there were no markings on your crack

cocaine?"  "Yes."  That's another lie. . . .  Maybe he learned that when he went to [defense counsel]'s office. . . .

[DEFENSE COUNSEL]: . . . Judge, objection.  What is that suppose[d] to mean?

The judge overruled the objection.  He stated the "bottom line is, . . . the inference is, after the defendant, his sister, and . . . Thompson got together, that that's when things changed."  Also, the prosecutor clarified his comments for the jury when he resumed the summation and stated they were not intended to imply misconduct by defense counsel.

The jury convicted defendant on all counts.  At his sentencing, the State requested the maximum penalty of ten years with five years of parole ineligibility.  Defendant argued for a six-year sentence with three years of parole ineligibility.

The trial judge addressed defendant's history in detail.  He noted defendant answered "no" when asked if he had a substance abuse problem, yet he had been part of an Intensive Supervision Program in a treatment center.  The judge stated, "for somebody his age, [defendant] has a significant history concerning how many convictions he has and . . . how many [convictions] he has in a certain period of time."  He added:

In 2005, it was not just the possession with intent to distribute, third degree. He also had a conviction of third degree unlawful possession of a weapon, a firearm, a gun. He also had a fourth degree possession of [an] illegal [ammunition] magazine. . . . [In] 2007, it was not just one count possession with intent to distribute narcotics. I have that it was three separate counts within a thousand feet of a school. [In] 2010, . . . possession of CDS [for] which he received a four-year state prison term.

So he had the benefit of probation and parole.

The judge found no mitigating factors, and found aggravating factors three, six, and nine applied. The judge concluded there was a high risk defendant would commit another offense because he had been arrested eleven previous times in a ten-year period. In the six-year period between 2004 and 2010, defendant incurred three disorderly persons convictions and three indictable convictions, including a firearms offense. The judge explained in detail that defendant's testimony was not credible. He concluded there was a need to deter defendant from committing future offenses because he continued to reoffend.

The judge merged count one with the second count and concluded:

> The aggravating factors outweigh the nonexistent mitigating factors. And I also find that aggravating factor number six . . . is significant, in that . . . it is a fact that every two to three years . . . defendant is picking up another indictable offense for narcotics.

11

. . . On count two . . . , which is third degree possession with intent to distribute [CDS], defendant is—extended term [eligible], which makes it a second degree, . . . defendant is committed to the custody of the Commission of the Department of Corrections for a period of eight years with four years of parole ineligibility. [The court] did not give [defendant] the ten with five. But it is eight with four because [defendant was] working, [he has] a strong family behind [him] and [he has] children that [he was] supporting.

On count three, the judge sentenced defendant to eight years with no parole bar to run concurrent with the sentence on count two.

Defendant raises the following points on appeal.

POINT I – THE CONVICTION FOR POSSESSION WITH INTENT WITHIN 500 FEET OF A PUBLIC PARK MUST BE VACATED BECAUSE THE STATE FAILED TO PROVE AN ELEMENT OF THE OFFENSE–THAT THE POSSESSION OCCURRED WITHIN 500 FEET OF A PUBLIC PARK. (NOT RAISED BELOW).

POINT II – THE DRUG-DISTRIBUTION EXPERT'S TESTIMONY VIOLATED THE HOLDINGS IN BOTH STATE V. SIMMS[3] AND STATE V. CAIN[4] BY OPINING DIRECTLY ON THE DEFENDANT'S GUILT, IMPROPERLY INVADING THE JURY'S EXCLUSIVE DOMAIN AS FACTFINDER, AND BOLSTERING THE STATE'S FACT EVIDENCE, REQUIRING REVERSAL. (NOT RAISED BELOW).

---

[3]  224 N.J. 393 (2016).

[4]  224 N.J. 410 (2016).

POINT III – THE PROSECUTOR COMMITTED MISCONDUCT WHEN HE: (1) ARGUED IN SUMMATION THAT THE THIRD-PARTY-GUILT SUSPECT WOULD NOT FACE CHARGES FOR THE DRUGS AT ISSUE IN THIS CASE, WHICH HE ADMITTED TO POSSESSING, BECAUSE THE PROSECUTOR THOUGHT HE WAS LYING; AND (2) DENIGRATED THE DEFENSE BY SUGGESTING THAT CONSISTENCY IN THE DEFENSE WITNESSES' TESTIMONY WAS DUE TO IMPROPER CONDUCT IN PRE-TRIAL PREPARATIONS.

POINT IV – THE FAILURE TO CHARGE THE JURY ON THIRD-PARTY GUILT DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

POINT V – THE CUMULATIVE EFFECT OF THE ERRORS EXPLAINED IN POINTS II-IV DENIED DEFENDANT A FAIR TRIAL. (NOT RAISED BELOW).

POINT VI – A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE JUDGE DOUBLE-COUNTED, ERRED IN FINDING AND WEIGHING AGGRAVATING AND MITIGATING FACTORS, AND IMPOSED THE MAXIMUM PAROLE BAR WITHOUT PROVIDING A BASIS FOR DOING SO.

A. The Judge Erred In Imposing The Maximum Parole Bar On Count Two Without Providing Any Justification For Doing So.

B. The Judge Erred In Finding And Weighing Aggravating And Mitigating Factors, And In Improper Double-Counting.

13

C.    Because Of The Errors Explained Above, Which Resulted In An Excessive And Unduly Punitive Sentence, The Case Should Be Remanded For Resentencing.

I.

Points I, II, and IV of defendant's brief raise issues for the first time on appeal.  As to the first point, he contends Lepore's testimony failed to prove defendant was within five-hundred feet of a public park, which is an essential element of N.J.S.A. 2C:35-7.1.  On the second point, defendant claims Holloway's testimony improperly offered an opinion as to defendant's guilt.  In the fourth point, defendant argues the trial judge's failure to sua sponte charge the jury on third-party guilt denied him due process and a fair trial.

> It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."
>
> [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).]

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below."  State v. Galicia, 210 N.J. 364, 383 (2012) (citations omitted).

14

Defendant neither objected to Lepore's testimony nor did he cross-examine him. Jiroux's testimony offered ample evidence regarding the location of the stop and Lepore's testimony regarding the methodology of determining the location of the stop in relation to the park was unrebutted. For these reasons, this argument lacks merit. R. 2:11-3(e)(2).

Holloway's testimony did not constitute plain error. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.J.R.E. 704. However, "[e]xpert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' N.J.R.E. 704, is not admissible unless the subject matter is beyond the ken of the average juror." Simms, 224 N.J. at 403 (quoting State v. Nesbitt, 185 N.J. 504, 515-16 (2006)). An expert may not express an opinion regarding a defendant's guilt or innocence and may not opine as to a defendant's state of mind. Cain, 224 N.J. at 426-28. However "[q]uestions can incorporate the evidence of record, such as the quantity of drugs, packaging materials, scales, and money discovered, and the expert can render an opinion on their significance in a drug-distribution operation." Id. at 429.

Holloway expressed no opinion on defendant's state of mind or his guilt. The purpose of his testimony was to explain to the jury the significance of the

sums of money and denominations discovered in defendant's possession as they relate to CDS distribution.

The trial judge was not required to charge the jury on third-party guilt. A defendant has a right to introduce evidence of third-party guilt, however, "a defendant's proofs must be capable of demonstrating 'some link between the third-party and . . . the crime.'" State v. Cotto, 182 N.J. 316, 332-33 (2005) (quoting State v. Koedatich, 112 N.J. 225, 301 (1988)).

Thompson's testimony did not require the judge to sua sponte charge the jury on third-party guilt because each of the charges against defendant included an element of possession. Thompson did not testify he was in possession of the drugs when defendant, as the sole occupant of the vehicle, was arrested. For these reasons, the argument lacks merit.

## II.

Defendant argues the prosecutor committed misconduct during the summation because he denigrated the defense and told jurors Thompson was not charged because he lied about the ownership of the car and the drugs. Defendant claims Thompson's testimony was credible and the trial judge erred when he concluded the jury could infer that he was not charged because he had lied about his involvement in the case. Defendant argues the combination of the

16

prosecutor's statements and the judge overruling defendant's objection sealed Thompson's lack of credibility in the jury's mind. He asserts there was no testimony to support the prosecutor's discussion of Thompson's testimony before the grand jury. Additionally, he argues the prosecutor committed misconduct by suggesting impropriety on the part of Tiesha, Thompson, and defense counsel.

"[I]t is exclusively within the province of the jury to find fact and evaluate witness credibility[.]" State v. Feaster, 156 N.J. 1, 81 (1998). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). Prosecutors "are duty-bound to confine their comments to facts revealed during the trial and reasonable inferences to be drawn from that evidence." Id. at 85 (citing State v. Marks, 201 N.J. Super. 514, 534 (App. Div. 1985)).

During summation, a prosecutor may not "make inaccurate legal or factual assertions[.]" Ibid. "It is improper for a prosecutor to express his personal opinion on the veracity of any witness." State v. Rivera, 437 N.J. Super. 434, 463 (App. Div. 2014) (citing State v. Marshall, 123 N.J. 1, 154 (1991)). "[P]rosecutors are not permitted to cast unjustified aspersions on the defense or

defense counsel." State v. Negron, 355 N.J. Super. 556, 577 (App. Div. 2002) (alteration in original) (quoting State v. Smith, 167 N.J. 158, 177 (2001)). "They may not, in ways that are excessive, 'directly demean[] the credibility of a defense witness.'" Ibid. (alteration in original) (quoting Smith, 167 N.J. at 178). "An argument that a defense or testimony was 'fabricated' is impermissible in the absence of support in the record." Id. at 577-78 (citing Smith, 167 N.J. at 179-80).

However, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" Id. at 578 (alteration in original) (quoting Smith, 167 N.J. at 181). For example, the prosecutor in Rivera during summation told the jury "[t]he reality is [the victim is] not lying" and stated "[t]he defendant is lying to you." 437 N.J. Super. at 463 (third alteration in original). We concluded the remarks were improper because although "the assertion about [the victim] was sufficiently tied to the evidence, . . . the more prejudicial assertion about defendant lying was not supported by the evidence the prosecutor referenced[.]" Ibid.

Here, the better practice would have been for the prosecutor to avoid characterizing Thompson's testimony as a lie and leave the determination to the

jury. Notwithstanding, this case is distinguishable from <u>Rivera</u> because the totality of the prosecutor's comments were tied to the evidence. As the prosecutor noted in the summation, Thompson failed to testify accurately regarding basic key facts, including the markings, weight, number, and amount of each type of cocaine stored in the vehicle. Tiesha's testimony contradicted Thompson's claim that he was the owner of the vehicle, as did Thompson's failure to explain why police recovered a substantial amount of mail belonging to defendant from the vehicle.

Defendant was not prejudiced by the prosecutor's statement that Thompson would not be charged because the charges in this case all required possession and there was no evidence Thompson had possession of the vehicle or the drugs inside it. This was underscored by Thompson's testimony which demonstrated he was unfamiliar with the quantity, nature, and location of the drugs stored in the vehicle.

The record does not demonstrate the prosecutor intended to convince the jury that defense counsel had Thompson change his testimony to assist the defense. Once defense counsel objected, the prosecutor clarified his statements at the judge's suggestion following a sidebar conversation as follows:

> Ladies and gentlemen, at any point in time, . . . I
> have been referencing [defense counsel]'s office, I'm

not trying to create the . . . inference that [counsel] did anything wrong here. But what I am stating is that you have . . . [Tiesha], . . . [d]efendant, and . . . Thompson all at [counsel]'s office. And isn't it funny and convenient, that after that meeting, witnesses are now saying that, "Yeah, I lied. Now, I'm afraid. You know, now, I can remember things. Oh, now, there's markings on the stamps."

The meeting at defense counsel's office was a part of the record, as were the inconsistent statements made by the defense witnesses. Therefore, the prosecutor could ask the jury to draw an inference of a connection between the meeting and the change in witness statements.

Because we conclude there was no reversible error on any of the arguments raised in points I through IV of defendant's brief, there was no cumulative error.

## III.

Finally, our review of a trial court's sentencing decision is limited. State v. Miller, 205 N.J. 109, 127 (2011). We do "not substitute [our] judgment for that of the trial court." State v. Burton, 309 N.J. Super. 280, 290 (App. Div. 1998). Instead, we "assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). We will "modify sentences when the application of the facts to

the law is such a clear error of judgment that it shocks the judicial conscience." Roth, 95 N.J. at 364.

Having considered defendant's arguments regarding his sentence under the applicable standard of review, we affirm for the reasons stated by the trial judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5552-16T4