# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2214-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAEED COUSAR, a/k/a SAEED
MCCALL, MUSA S. COUSAR,
and BRIAN PRICE,

    Defendant-Appellant.

_____

> Argued September 23, 2019 – Decided December 4, 2019
>
> Before Judges Sumners, Geiger, and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-02-0111.
>
> Tamar Yael Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Tamar Yael Lerer, of counsel and on the briefs).
>
> Paul Henry Heinzel, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset

County Prosecutor, attorney; Paul Henry Heinzel, of counsel and on the brief).

PER CURIAM

Tried before a jury, defendant Saeed Cousar was found guilty of third-degree theft by deception, N.J.S.A. 2C:20-4, and third-degree theft of identity, N.J.S.A. 2C:21-17(a)(1). The jury accepted the State's theory that defendant took the personal identifiers of W.S. (Whitlock Sanders)[1] to set-up a checking account in Sanders's name at Peapack Gladstone Bank (PG Bank) enabling defendant to transfer funds online to the checking account from Sanders's pre-existing savings account and mortgage account at PG Bank without Sanders's authorization. After merger, defendant was sentenced to a discretionary extended prison term of ten years, with a discretionary parole disqualifier of five years.

In his appeal, defendant argues:

POINT I

THE SLEW OF HIGHLY DETAILED AND IRRELEVANT EVIDENCE OF PRIOR CONVICTIONS WAS INADMISSIBLE, CAUSED UNDUE PREJUDICE, AND NECESSITATES REVERSAL OF DEFENDANT'S CONVICTIONS.

---

[1] We use initials and a pseudonym to protect the victim's identity. We do likewise for other victims mentioned in this opinion.

A-2214-17T3

A. INTRODUCTION

B. BECAUSE THERE WAS NO VALID NON-PROPENSITY PURPOSE FOR THE ADMISSION OF THIS EVIDENCE, IT FAILED TO MEET THE FIRST PRONG FOR ADMISSIBILITY UNDER COFIELD.[2]

> I. Because Motive, Absence Of Mistake, Opportunity, And Knowledge Were Irrelevant To The Case, They Could Not Provide A Basis For The Admission Of The Other-Bad-Act Evidence.

> II. The Other-Bad-Act Evidence Did Not Meet The Strict Requirements To Be Admissible To Demonstrate Common Scheme Or Identity.

C. BECAUSE THE VOLUME AND DETAIL OF THE EVIDENCE RENDERED ITS PREJUDICIAL IMPACT GREATER THAN ITS PROBATIVE VALUE, IT FAILED TO MEET THE FOURTH PRONG FOR ADMISSIBILITY UNDER COFIELD.

D. THE ADMISSION OF THE FACT DEFENDANT'S PRIOR BAD ACTS RESULTED IN CONVICTIONS WAS INAPPROPRIATE AND UNDULY PREJUDICIAL.

E. THE FAILURE TO GIVE A [N.J.R.E.] 404(B) CHARGE THAT CLEARLY EXPLAINED THE PERMISSIBLE USE OF THE PRIOR-BAD-ACT EVIDENCE NECESSITATES REVERSAL.

F. CONCLUSION.

POINT II

---

[2] State v. Cofield, 127 N.J. 328, 338 (1996).

A-2214-17T3

THE PROSECUTOR COMMITTED MISCONDUCT WHEN, IN SUMMATION, HE PRESENTED AN INFLAMMATORY DISPLAY: A PUZZLE, MADE UP OF PIECES OF EVIDENCE THAT, WHEN COMPLETE, CONSTITUTE DEFENDANT'S FACE. (NOT RAISED BELOW).

POINT III

THE IDENTIFICATION OF DEFENDANT FROM THE SURVEILLANCE STILLS WAS IMPROPER AND NECESSITATES REVERSAL OF HIS CONVICTIONS. (NOT RAISED BELOW).

POINT IV

EVEN IF NONE OF THE ERRORS WOULD BE SUFFICIENT TO WARRANT REVERSAL, THE CUMULATIVE IMPACT OF THOSE ERRORS DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

POINT V

DEFENDANT'S SENTENCE IS EXCESSIVE AND THE IMPOSITION OF A DISCRETIONARY PAROLE DISQUALIFIER UNCONSTITUTIONAL.

For the reasons that follow, we affirm.

I.

We highlight the testimony adduced during the six-day jury trial that is necessary to provide context for our decision.

A. The Thefts

4

On June 27, 2013, a checking account in Sanders's name was opened at PG Bank and linked to his savings account at the bank by someone other than Sanders, using Sanders's personal identifiers, including: home address, date of birth, social security number, and driver's license number.[3] The email address listed for the new checking account – chase2350@yahoo.com – was unknown to Sanders. The IP address associated with the device that completed the remote application for the checking account and activated internet banking was 72.76.189.54. The same IP address was used in all of the online transactions made in this case.

On three different dates, a total of approximately $62,000 was transferred from Sanders's savings account to the checking account and fifteen transfers were made from the checking account to other non-PG Bank accounts through PG Bank's "bill pay" function. The payees for those transfers were listed as William Sanders, James Sanders, S. Cousar, or Saeed Cousar. Two phone numbers were associated with these transfers, 201-920-7432 and 201-589-7656. The parties stipulated the 201-589-7656 number was serviced by Sprint and the listed subscriber was defendant, at the same Stevens Avenue address.

---

[3] According to Sanders, the answer to the security question – his mother's maiden name – and the phone number entered by the perpetrator were incorrect.

Eleven of those fifteen transfers, which totaled approximately $52,000, were transferred to a Bancorp account. Bancorp issued prepaid, reloadable cards serviced by Green Dot Corporation to that Bancorp account. It was stipulated almost $9,000 was deposited from Bancorp to a Green Dot account. The name associated with the Green Dot account was Whitlock Sanders and had false identifiers for the phone number, 201-589-7656, the email address, chase2350@yahoo.com, and the street address, 328 Stevens Avenue, Jersey City.

Without objection, the State admitted into evidence videos and still photographs from multiple ATMs' surveillance footage in which someone withdrew money from the Green Dot account. More than $900 was removed from the account through three ATM transactions.

Four of the bill pay transfers, totaling approximately $12,000, went into a One West bank account. It was stipulated One West issued prepaid cards known as Magic Cards, which permit customers to withdraw cash at ATMs. Approximately $11,000 was deposited from One West onto a Magic Card. The cardholder information associated with that account identified defendant and his phone number 201-589-7656, email address scousar1516@gmail.com, home address 328 Stevens Avenue Jersey City, date of birth, and social security

6

number. Detective Rachel McCaffrey from the Prosecutor's Office special investigations unit testified that she "confirm[ed]" the date of birth and social security number belonged to defendant.

In addition to the bill pay transfers, $9,000 was transferred directly from the Sanders's PG Bank savings account into a PayPal account. The parties stipulated the PayPal account was listed in Sanders's name, two addresses were used: 328 Stevens Avenue, Jersey City and one in Mendham.[4] Sanders's correct date of birth; the email address WhitlockSanders@gmail.com; and the phone number 201-920-7432. The phone number belonged to an Edwin Santiago. Detective Rachel McCaffrey of the Hudson County Prosecutor's Office Special Investigations Unit, who investigated the theft, testified that she never spoke to Santiago. Santiago, Anthony Sinea, Derrick McCall, and Eric Jefferson, lived at 328 Stevens Avenue, a three-bedroom apartment, with defendant, who was the sole tenant listed on the lease.

Sanders testified he did not open, or authorize anyone to open, the Bancorp, OneWest, or PayPal accounts in his name.

It was stipulated the listed subscriber of the IP address was Sinea, with an address at 328 Stevens Avenue, Jersey City. The IP address is associated with

---

[4] To protect the victim's identity, we do not disclose his address.

the phone number 201-589-7656, the email address scousar1516@gmail.com, and the username scousar1516. As discussed above, it was stipulated Sprint provided service for that phone number, and defendant was the subscriber with the same Stevens Avenue address. Det. McCaffrey testified that she never located or interviewed Sinea.

B. <u>Evidence Seized During Search Warrant</u>

Detective McCaffrey executed a search warrant at defendant's 328 Stevens Avenue residence, seizing several documents addressed to defendant, a Verizon bill addressed to Sinea, and a deposit slip with McCall's name on it. In one bedroom, a laptop was found, and, in another bedroom, a desktop computer was found. A U.S. bank statement for a N.M. was seized. Also confiscated were pieces of paper with sets of nine-digit numbers written on them, which according to Det. McCaffrey, was significant because "social security numbers happen to be nine digits," and the other "numbers with the slashes appear to be date[s] of birth." She also stated that when she googled the remaining numbers they "came back as [American Bankers Association] routing numbers."

Nicolas Perone, an FBI forensic examiner, testified regarding forensic examination of the desktop computer. The computer was registered to cousar1516@live.com. Of the numerous emails accessed on the computer, one,

dated June 27, 2013, had the subject line, "Your bank account has been confirmed." There was also a welcome email sent to a Gmail account from PayPal, addressed to "Whitlock Sanders." The desktop computer retained "web fragments" containing the email address chase2350@yahoo.com. The computer was not password protected. Perone explained that an IP address is not specific to an individual computer or device, but, rather, corresponds to a physical location.

C. <u>Bad Acts Testimony</u>

Prior to trial, a Rule 104 hearing was conducted in which the State sought the court's permission to admit evidence of fourteen prior incidents of defendant's bad acts against different victims resulting in convictions, in accordance with N.J.R.E. 404(b), to demonstrate a common scheme or plan, motive, absence of mistake, opportunity, knowledge, or identity.

Over defendant's objection, the motion court – which did not conduct the trial – admitted twelve of the incidents, in which defendant was convicted for: (1) theft by deception in 1998; (2) theft by deception in 2001; (3) identity theft in 2003; (4) receiving stolen property in 2003; (5) theft by deception in 2004; (6) possession of controlled dangerous substances in 2004 where fraudulent use of credit card charges were dismissed; (7) tendering bad checks in 2007; (8)

A-2214-17T3

identity theft in 2008; (9) wrongful impersonation in 2008; (10) theft by deception in 2008; (11) computer theft in 2011; and (12) fraudulent purchases in 2013. However, the State chose to present evidence of only two of the incidents at trial: fraudulent purchases in 2013 and wrongful impersonation in 2008.

1. First Incident

Before the 2013 indictment was presented as the first prior bad act, the court gave a curative instruction to the jury discussed later in this opinion. The indictment charged the defendant with third-degree computer theft. Specifically, the indictment charged that defendant "knowingly did access, or attempt to access, a database, computer, computer software, or computer network, to obtain services, property, personal identifying information or money, from [L.O. (Oxley)], with the purpose to deprive the owner thereof." The jury was read defendant's judgment of conviction for the offense.

Oxley testified that in 2011, he sold his home and deposited the proceeds from the sale into a savings account with Chase Bank. One day, he received a bank statement, which revealed, "$8,000 or more was gone." He reported the fraud to the bank and the police.

A-2214-17T3

Detective Richard Jupinka of the Manchester Township Police Department testified extensively as to his investigation into the Oxley fraud. He confirmed Oxley's testimony and noted two of the transactions from Oxley's account were to pay a premium for an Esurance automobile insurance policy in defendant's name. The policy listed defendant's address as 142 Boswick Avenue, Jersey City, and had an email address of scousar1516@yahoo.com. The jury was further advised the IP address from the device that made the payments was registered to a M.J. at the 142 Boswick Avenue address. Chase Bank disclosed there was no record of defendant having an account at their bank.

2. Second Incident

Regarding the second prior bad act, the jury was advised of the 2008 complaint against defendant, which led to his conviction for third-degree identity theft of M.S. (Smith).[5] Smith gave detailed testimony regarding his discovery and reporting of charges[6] on his credit card statement that neither he

---

[5] The complaint charged that defendant did "obtain personal identifying information of [M.S. (Smith)] and did use that information, or assist other persons in using that information, in order to assume the identity of, or represent himself as another person, without that person's authorization, and with the purpose to fraudulently obtain, or attempt to obtain, a benefit or services valued at more than $500."

[6] Charges were for a car loan; limousine service; and retail purchases.

A-2214-17T3

nor his wife had made, and an account that was added to his bank account without his knowledge or authorization.

Sergeant Jeffrey Tucker of the Denville Township Police Department, who investigated Smith's complaint, confirmed Smith's testimony. Sgt. Tucker discovered that the person who secured a bank loan in Smith's name to pay for the car presented an insurance card in defendant's name at the car dealership. He further testified that defendant was picked out of a photo array by an employee of the dealership. Sgt. Tucker itemized the purchases made with the fraudulent card and stated some of the charges were: associated with the email address chase2350@yahoo.com; ordered from a computer with an IP address registered to Kevin Brown; and for items shipped to the address defendant lived at the time.

Sgt. Tucker testified, over defense's objection, about executing a search warrant of defendant's home. Tucker seized a compact disc (CD) labeled "IDs," which was, in his opinion, "short for identification." Admitted into evidence was a document Tucker stated was "a list of names with Social Security numbers, some with birth dates, some with driver's license numbers — I believe it was 100 — about 150 different people."

D. <u>The Defense</u>

Through the testimony of his friend Willie Thomas and his cousin McCall, defendant contended someone else in his apartment committed the theft from Sanders. Both witnesses testified defendant lived at 328 Stevens with Sinea, Santiago, McCall, and Eric Jefferson. The witnesses further testified all the apartment's tenants had access to and regularly used the non-password protected computer seized by the prosecutor's office.

On cross-examination, however, both Thomas and McCall buttressed the State's case by identifying defendant as the man in the stills from the ATM's surveillance footage withdrawing money from the Green Dot account.

E. <u>Summation</u>

In support of the contention that defendant did not commit the theft, defense counsel pointed out that the IP address was in Sinea's name and that McCall, Santiago, Jefferson, or Sinea were the perpetrator(s), who were never spoken to or investigated by the prosecutor's office.

As for the State, the prosecutor emphasized defendant's role as the identity thief, by using visual representations of the identified evidence in the shape of puzzle pieces that when placed together as a single image revealed the surveillance still photo identified as defendant.

A-2214-17T3

E. <u>Jury Instruction - Bad Acts</u>

After summations, in relevant part, the jury was given the following instruction during the final charge and a similar instruction before the introduction of any bad acts testimony:

> The [S]tate has introduced evidence that the defendant may have committed other crimes involving theft by deception and wrongful impersonation. Normally, that type of evidence is not permitted under our rules. Our rules exclude evidence that a defendant has committed other crimes, wrongs or actions when it's offered only to show that he has a disposition, a tendency to do wrong and, therefore, must be guilty of the present charge.
>
> Before you can give any weight to this other evidence, you must be satisfied that the defendant committed these other wrongs, crimes or actions. If you're not so satisfied, you may not consider it at all.
>
> However, our rules do permit evidence of other crimes, wrongs or actions when the evidence is used for certain, specific narrow purposes. In this case, the [S]tate alleges that the evidence of these prior crimes, wrongs, actions, are relevant to a common scheme or plan, knowledge, the absence of mistake or accident. Specifically, the [S]tate contends that the current crime is part of a common scheme or plan by the defendant to steal victim's -- from victims by exploiting their personal information. The [S]tate contends that the prior crimes, wrongs, actions are relevant to provide the defendant's knowledge of the theft, the stolen money, the absence of mistake or accident. That is, the [S]tate contends that the transfer of the money from the Peapack-Gladstone Bank was the result of . . .

14

intentional criminal conduct and it was not the result of some innocent . . . banking accident or mistake.

Whether this evidence does, in fact, demonstrate a common scheme or plan, knowledge, absence of mistake, that's for you to decide. You may decide that the evidence does not demonstrate a common scheme or plan, or knowledge, or absence of mistake and is not helpful to you at all. In that case, disregard it.

On the other hand, you may decide that the evidence does demonstrate a common scheme or plan, knowledge, absence of mistake and, if so, use it for that specific purpose only.

However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant may have committed other crimes, wrongs or actions, he must be guilty of the present offense. I have admitted this evidence to help you decide the specific questions of a common scheme or plan, knowledge, or absence of mistake. You may not consider it for any other purpose. You may not find the defendant guilty now simply because the [S]tate offered evidence that he may have committed other crimes on a prior occasion.
(Emphasis added).

F. Sentencing

After jury deliberations, defendant was found guilty of third-degree theft by deception and third-degree theft of identity. At the subsequent sentencing, the court applied aggravating factors three, six, nine, eleven, and twelve. N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); -

15

1(a)(6) (extent of defendant's prior criminal record); -1(a)(9) (the need to deter defendant and other); -1(a)(11) (imposition of a fine, penalty or order of restitution without also imposing a term of imprisonment would be perceived by the defendant or others merely as part of the cost of doing business); and -1(a)(12) (offense was against a person defendant knew or should have known was 60 years of age or older, or disabled). The court applied only mitigating factor six. N.J.S.A. 2C:44-1(b)(6) (defendant will compensate the victim for the damage he sustained).

The court, after merger, sentenced defendant to an extended ten-year prison term with a five-year period of parole ineligibility. The sentence was the maximum possible extended-term sentence, with the maximum period of parole ineligibility.

## II.

This appeal can be boiled down to four categories where defendant contends the trial court erred: (1) improper admission of evidence; (2) prosecutorial misconduct during summation; (3) cumulative errors; and (4) excessive sentence. Defendant argues if none of the errors in the first two categories warrant reversal of his conviction, they would, together, constitute cumulative error to justify reversal.

A. Improper Admission of Evidence

1. Bad Acts Evidence

Defendant contends in Point I there were four errors regarding the admission of his other crimes as evidence. First, he argues there was no valid non-propensity purpose for the admission of the bad-act evidence. Therefore, the evidence failed to meet the first prong of Cofield and was inadmissible. Second, he contends the evidence was more prejudicial than probative, due to the excessive amount, and inflammatory nature, of what was presented. Therefore, the evidence failed to meet the fourth prong of Cofield and was inadmissible. Third, the jury was inappropriately told defendant's prior bad acts resulted in convictions, which was highly prejudicial and defendant stresses never should have been put in front of the jury. Last, defendant argues the N.J.R.E. 404(b) jury instruction was inadequate to ensure the jury would use the evidence for its proper purposes. We are unpersuaded.

An appellate court gives "great deference" to a trial court's determination on the admissibility of "other bad conduct" evidence. State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2010) (citing State v. Foglia, 415 N.J. Super. 106, 122 (App. Div. 2010)). We apply an abuse of discretion standard; there

17

must be a "clear error of judgment" to overturn the trial court's determination. State v. Castagna, 400 N.J. Super. 164, 182-83 (App. Div. 2008).

N.J.R.E. 404(b) provides that evidence of other crimes or bad acts is generally not admissible, unless used for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." The concern in admitting evidence of other crimes is "the jury may convict the defendant because he is a bad person in general." Cofield, 127 N.J. at 336 (internal quotation marks omitted). "[O]ther crimes evidence may be admissible if offered for any non-propensity purpose, including the need to provide necessary background information about the relationships among the players" involved. State v. Rose, 206 N.J. 141, 180-81 (2011) (emphasis, internal quotation marks, and citations omitted). The evidence is not required to prove or disprove a fact at issue but need only support a desired inference. State v. Swint, 328 N.J. Super. 236, 252-53 (App. Div. 2000).

In Cofield, our Supreme Court set forth a four-pronged test to govern the admission of such evidence:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Cofield, 127 N.J. at 338 (quoting Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a), 38 Emory L.J. 135, 160 (1989)); see also State v. Carlucci, 217 N.J. 129, 140-41 (2014) (reaffirming the Cofield test).]

Our Supreme Court has also explained that the second Cofield prong "need not receive universal application in [N.J.R.E.] 404(b) disputes." State v. Williams, 190 N.J. 114, 131 (2007).

Once N.J.R.E. 404(b) evidence is found to be admissible, "the court must instruct the jury on the limited use of the evidence." Cofield, 127 N.J. at 340-41 (internal citation omitted). "[T]he court's instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Id. at 341 (quoting State v. Stevens, 115 N.J. 289, 304 (1989)).

Here, after conducting an N.J.R.E. 104 hearing, applying Cofield, the motion court issued a sixteen-page written opinion finding that twelve of the

fourteen incidents involving defendant's crimes of identity thefts, theft, and theft by deception to obtain automobiles, consumer goods, and cash, were admissible because all four prongs of the Cofield factors were satisfied. As noted, only two of the twelve incidents were presented to the jury, thus, our focus is only on the evidence related to those incidents and defendant's contentions that only Cofield's first and fourth prongs were not satisfied.

The first prong was satisfied because the other crimes were similar to the offenses charged in this matter – identity theft and theft by deception. As the court determined they were relevant to show identity and absence of mistake given defendant's defense that others living with him committed the offenses against Sanders. The other crimes also were relevant to show a "common scheme or plan" in defendant's thefts. See Stevens, 115 N.J. at 305-06 (admissibility of evidence that tends to "prove[] the existence of an integrated plan, of which the other crimes and the indicted offense are components").

There were many digitally-gathered commonalities in the personally identifiable information – the same email address, defendants own name being used in a few transactions, phone numbers, and the last four digits of his social security number – between the prior crimes and the charge in question. And evidence from the prior crimes was relevant in helping the jury understand the

importance of the numbers on the CDs and expose the flaws in the defense's theory that one or more of individuals that lived at 328 Stevens committed the crime and not defendant.

Under the fourth prong, the motion court closely weighed the probative value of the evidence against the apparent prejudice. The court properly recognized the jury could infer that because defendant was convicted of similar crimes he presumably could have committed this crime. Nevertheless, the court determined the probative value of the other crimes were extremely high because the facts of those crimes would tend to prove absence of mistake or knowledge about how they were successfully committed. Acknowledging the State's theory that defendant's prior bad acts establish a "common scheme or plan and absence of mistake," the court reasoned the probative value of the evidence under that particular theory was not outweighed by any prejudice to defendant.

We agree with the State that the detailed evidence of defendant's prior crimes it presented was necessary to disprove his theory that his apartment mates had access to his computer and committed the crime. From our review of the record, given the extensive efforts defendant performed to facilitate his theft crimes, the level of detail presented by the State was appropriate. Consequently, we reject defendant's contention, citing State v. Willis, 225 N.J. 85, 97 (2016),

that the amount of other crimes evidence was so disproportionate it had the clear capacity to distract the jury's attention from whether he stole Sanders's identity for financial gain, and have it place too much weight on his prior criminal acts. The fact that the State limited its evidence of bad acts to only two of the twelve incidents that were deemed admissible is indicative of the State's restraint in its case despite the long trail of defendant's convictions that demonstrate a common scheme or plan and absence of mistake.

We likewise conclude there is no merit to defendant's contention that the N.J.R.E. 404(b) jury instruction was inadequate to assure that the jury would use the evidence for its proper purposes. Because defendant did not object to the instruction, we review his argument under the plain error rule. Thus, the instruction given must be "clearly capable of producing an unjust result," Rule 2:10-2, and "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[,]" State v. Macon, 57 N.J. 325, 336 (1971). Moreover, the failure to object raises the presumption that these instructions were adequate. State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003) (citing Macon, 57 N.J. at 333).

In following the Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016), the court instructed

the jury to decide whether the bad acts evidence demonstrated common scheme or plan, knowledge, the absence of mistake or accident, and if it agreed with the State, to use it for that limited purpose. The court cautioned the jurors:

> [Y]ou may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant may have committed other crimes, wrongs or actions, he must be guilty of the present offense. I have admitted the evidence to help you decide the specific questions of a common scheme or plan, knowledge, or absence of mistake. You may not consider it for any other purpose. You may not find a defendant guilty now simply because the State offered evidence that he may have committed other crimes on a prior occasion.

Since "we presume the jury followed the court's instructions," State v. Smith, 212 N.J. 365, 409 (2012) (citing State v. Loftin, 146 N.J. 295, 390 (1995)), and there is no indication that it did not, we can only conclude that the jury properly used the other crimes evidence in determining that defendant committed the crime against Sanders as part of a common plan or scheme to find defendant guilty and did not use it for propensity purposes. Accordingly, we are satisfied there has been no showing that the jury instruction produced an unjust result.

2. Identification of Defendant from the Surveillance Stills

23

In Point II, defendant asserts the testimony the State elicited from his two witnesses, Thomas and McCall, on cross-examination identifying him as the person depicted in the bank surveillance cameras conducting ATM transactions was inappropriate because it was the jury's role to determine if the person in the surveillance still was defendant. State v. McLean, 205 N.J. 438, 543 (2011). He further argues the trial court failed to instruct the jury on how to carefully scrutinize these identifications, which violated his due process rights and a fair trial. U.S. Const., amends. V and XIV; N.J. Const., art. I, ¶¶ 1, 9 and 10. Acknowledging he did not object to the identifications, defendant contends they were clearly capable of producing an unjust result in accordance with the plain error rule, Rule 2:10-2. We disagree.

Lay opinion testimony is permitted when it is "rationally based on the perception of the witness" and "will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. Lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." McLean, 205 N.J. at 462. "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." Ibid. "The [r]ule does not permit

a witness to offer a lay opinion on a matter . . . as to which the jury is as competent as he to form a conclusion[.]"  Id. at 459 (internal quotation marks and citation omitted).  Also, under N.J.R.E. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Opinion testimony "is subject to exclusion if the risk of undue prejudice substantially outweighs its probative value."  State v. Summers, 176 N.J. 306, 312 (2003).

A witness who can demonstrate familiarity with the defendant may be permitted to testify regarding identification.  See State v. Lazo, 209 N.J. 9, 22-24 (2012) (citing State v. Carbone, 180 N.J. Super. 95 (Law. Div. 1981)).  For example, in Carbone, the court admitted the State's lay witness testimony of personal photographic identifications of the defendant before the jury by individuals who did not witness the crime, but nevertheless had personal knowledge of and familiarity with the defendant's appearance at the time the defendant committed the offense charged.  180 N.J. Super. at 96-100.

Applying these principles, we discern no basis to conclude the identifications of defendant by his witnesses denied him due process and a fair trial.  Clearly, they knew defendant and were able to inform the jury whether

defendant was the person depicted in the bank surveillance cameras conducting ATM transactions.

B. <u>Prosecutorial Misconduct During Summation</u>

In Point II, defendant contends there was prosecutorial misconduct by the State's use of an "inflammatory" visual aid in summation. The prosecutor commented on relevant trial evidence – i.e., phone numbers, an email address, an IP address, names of witnesses, and service providers – written on separate pieces of paper with images, and like a puzzle, placed them on a larger board for the jury to view. When the summation was concluded, the board depicted a photo of defendant's face taken from the surveillance stills that defendant's own witnesses had identified as him. The prosecutor's summation ended with the comment: "Although that money was stolen by someone who was unknown to them, that person is known to you. You can attach the face to the person behind the computer. That person was the defendant, Saeed Cousar, and I ask that you find him guilty of both counts. Thank you." Defendant avers this was an improper use of a visual aid that violated his rights to due process and a fair trial and requires the reversal of his convictions. <u>U.S. Const.</u>, amends. V and XIV; <u>N.J. Const.</u>, art. I, ¶¶ 1, 9 and 10. We disagree.

In our review of a claim of prosecutorial misconduct, we engage in a three-part inquiry when determining whether the prosecutor's conduct was sufficiently egregious to warrant a new trial. State v. Timmendequas, 161 N.J. 515, 575-76 (1999). We "must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." State v. Frost, 158 N.J. 76, 83 (1999).

Where defense counsel does not object to the challenged comment during summation, it "suggests that defense counsel did not believe the remarks were prejudicial at the time they were made" and "deprives the court of an opportunity to take curative action." Id. at 84. Under those circumstances, the comment should be deemed harmless, if comments were not "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Bakka, 176 N.J. 533, 548 (2003) (quoting State v. Bakston, 63 N.J. 263, 273 (1973)).

A defendant's conviction should only be reversed due to prosecutorial wrongdoing "where the . . . misconduct was so egregious that it deprived the defendant of a fair trial." Frost, 158 N.J. at 83 (citations omitted). While a prosecutor "in . . . summation may suggest legitimate inferences to be drawn

from the record," a prosecutor "commits misconduct when [the summation] goes beyond the facts before the jury." State v. Harris, 156 N.J. 122, 194 (1998). The misconduct "must have been 'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Timmendequas, 161 N.J. at 575.

Defendant cites to State v. Rivera, 437 N.J. Super. 434, 452-53 (App. Div. 2014), where we held it was improper for the State to use inflammatory visual aids that assert defendant's guilt. The prosecutor there presented in his opening a series of PowerPoint slides with the final slide containing a photograph showing defendant's face and neck with the text "Defendant GUILTY OF: ATTEMPTED MURDER" which was presented again in summation. Id. at 447, 464. Defendant argues that while the visual aid in this case did not have the word "GUILTY" on it, the implication is the same: his face was put up in front the jury in conjunction with the prosecutor's assertion of defendant's guilt. The fact that the misconduct took place in the closing does not mitigate the prejudicial impact of the aid, according to defendant. Defendant reasons, if anything, the prejudicial impact was heightened because summations leave a lasting impression on the jury as the final adversarial stage of the trial. He stresses that misconduct at this stage is fatal to a defendant's right to a fair trial.

See In re Pers. Restraint of Glasmann, 286 P.3d 673, 679 (Wash. 2012) ("Prejudicial imagery may become all the more problematic when displayed in the closing arguments of a trial, when the jury members may be particularly aware of, and susceptible to, the arguments being presented.") (internal citations omitted).

In this case, none of the prosecutor's use of defendant's image and remarks compromised the ability of the jury to fulfill its fact-finding function. The fact that there was no objection suggests defense counsel did not believe the photo and remarks were prejudicial at the time they were made. Yet, even if an objection was made and had been denied, we see no due process violation. There was nothing inaccurate or misleading about the prosecutor's presentation.

Defendant's reliance on Rivera is misplaced. There, we recognized the offensive nature of the prosecutor's conduct was his declaration of the defendant's guilt without reference to the evidence presented, and it was not the only prejudicial misconduct by the prosecutor that was "inconsistent with the prosecutor's obligation to try the case fairly." 437 N.J. Super. at 453. Thus, we never held that the prosecutor's "opening statement and PowerPoint were, in

themselves, sufficiently prejudicial to require a new trial."[7]  <u>Ibid.</u>  In this case, the photo of defendant's face had been admitted into evidence and contained inscriptions of admissible evidence.  The image therefore contained facts that had already been provided to the jury.  In addition, the prosecutor's comment that defendant was guilty was not his personal opinion but was based upon the evidence presented at trial.  In sum, there was nothing about the prosecutor's conduct so egregious that we can reasonably conclude led the jury to a guilty verdict it otherwise might not have reached.

C. <u>Cumulative Impact of Errors</u>

When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair."  <u>State v. Wakefield</u>, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." <u>State v. Weaver</u>, 219 N.J. 131, 155 (2014).

---

[7]  We also concluded the trial court's curative instruction prompted by the defendant's objection was "not sufficiently pointed to allow us to conclude that the jurors understood it to refer to the displayed and oral declarations of defendant's guilt." <u>Rivera</u>, 437 N.J. Super. at 453.

Given our conclusions that there were no trial errors regarding the admission of evidence and prosecutorial misconduct, there can be no cumulative errors as contended in Point IV that could have denied defendant a fair trial.

D. Excessive Sentence

In Point V, defendant contends his ten-year sentence is excessive for a non-violent crime. Defendant argues it was improper for the judge to find aggravating factors three and eleven. Specifically, aggravating factor eleven was inappropriate because it only applies if the court is balancing a non-custodial term against a state prison sentence. State v. Dalziel, 182 N.J. 494, 502 (2005). Defendant further argues that because the court relied on his prior record to find that an extended term was appropriate, its reliance on that same record to find aggravating factor three was double-counting. Accordingly, defendant maintains there should be a remand for resentencing because there was no justification for giving him a ten-year sentence "for a crime that would ordinarily carry a maximum of five years."

Defendant moreover stresses that the discretionary parole disqualifier is unconstitutional. When the State makes an application for a discretionary extended term, he avers the court must first determine whether he has the appropriate prior convictions to establish his eligibility for an extended-term

sentence.  State v. Pierce, 188 N.J. 155, 161 (2006).  In addition, he contends that even where the grounds for a persistent offender status have been proven, a court is not required to impose an extended-term sentence, which "relatively few convictions will warrant."[8]  State v. Dunbar, 108 N.J.80, 89 (1987).

We reject defendant's contention that his sentence is manifestly excessive.  Given defendant's extensive prior criminal record – involving similar offenses of theft by deception and identity theft – as a persistent offender, the court appropriately granted the State's motion to impose a discretionary extended term of incarceration on pursuant to N.J.S.A. 2C:44-3(a).  The court reasonably identified and weighed the pertinent aggravating factors, and reasonably found one mitigating factor, all in accordance with State v. Fuentes, 217 N.J. 57, 70 (2014).  Defense counsel conceded that defendant was statutorily eligible for a discretionary extended term sentence.

---

[8] Defendant also noted that our Supreme Court recently granted certification in State v. Kiriakakis, No. A-3061-15 (App. Div. Aug. 28, 2017) cert. granted, 232 N.J. 374 (2018).  In that case, the defendant argued that the statute allowing for the imposition discretionary parole disqualifier violates the requirement that the imposition of a parole disqualifier be based only on a finding of fact made by the jury beyond a reasonable doubt.  Kiriakakis, slip op. at 3.  After the briefs were submitted, the Court affirmed this court's decision.  State v. Kiriakakis, 235 N.J. 420 (2018).

There was no impermissible double-counting of factors.  See State v. Varona, 242 N.J. Super. 474, 491 (App. Div. 1990) (when defendant's conduct far exceeds that necessary to satisfy the elements of an offense, it is not double counting to consider it).  As the State emphasizes, defendant has seventeen prior convictions; eight times more than the two needed under N.J.S.A. 2C:44-3(a).  The sentence, while at the upper end of the permissible range, does not shock the judicial conscience.  State v. Bieniek, 200 N.J. 601, 607-08 (2010).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2214-17T3