**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3806-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN M. MARVINE,
a/k/a JONATHAN MARVINE
2ND, and JONATHAN MARLIN,

     Defendant-Appellant.

_____

Argued October 16, 2024 – Decided January 27, 2025

Before Judges Sumners, Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 19-10-1452.

Susan Brody, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Susan Brody, on the brief).

Melinda A. Harrigan, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Melinda A. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant Jonathan M. Marvine appeals from his jury trial conviction for conspiracy to commit attempted murder arising from a drive-by shooting that injured two victims.[1]  Marvine contends the prosecutor committed misconduct during his summation by improperly bolstering the credibility of State witnesses and by overstating the ballistics evidence regarding the type of ammunition used in the attempted murder.  Defendant also contends the court erred by refusing to give an adverse inference instruction under State v. Clawans[2] based on the State's failure to present testimony from the victims—one of whom testified for the defense—and by denying defendant's motion for a new trial or judgment notwithstanding the verdict.  After reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We discern the following procedural history and pertinent facts from the record.  In October 2019, codefendants Marvine and Brooks were charged by indictment with first-degree attempted murder of Quamere Smith, N.J.S.A.

---

[1]  We consider this appeal back-to-back with State v. Gary R. Brooks, A-3805-21.  Brooks and Marvine were tried together.  Because Brooks raises different issues on appeal, we issue separate opinions.

[2]  38 N.J. 162 (1962).

2C:5-1 and N.J.S.A. 2C:11-3; first-degree attempted murder of J'Kier Perry, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; first-degree conspiracy to commit attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:5-2, and N.J.S.A. 2C:11-3; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b).

Marvine and Brooks were tried over the course of eight days in October and November 2021. We briefly summarize the evidence adduced at trial. On August 2, 2019, at about 11:30 a.m., police responded to a report that shots had been fired at the intersection of Monroe and Ridge Avenues in Asbury Park. At the scene, Monmouth County Prosecutors Office (MCPO) Detective Wayne Raynor discovered two spent shell casings and broken glass in the street. Upon arriving at the Jersey Shore Medical Center to see the victims, Raynor noticed a silver Hyundai Tucson with Texas license plates parked in front of the hospital's emergency room. The vehicle had a broken window, bullet holes in the door, and blood-stained seats. Raynor also saw a bullet lodged in the inside frame of the passenger side of the vehicle.

Raynor learned that two individuals, Smith and Perry, were being treated for gunshot wounds in the emergency department. Smith had been struck in the shoulder and neck. Perry had been struck in the head. Both survived. As

Raynor was leaving the hospital, a security guard informed him that hospital staff had found another bullet on the floor of the emergency room.

When he returned to the MCPO, Raynor reviewed a video taken by an Asbury Park surveillance camera at the intersection of Monroe and Ridge Avenues at the time of the shooting. He observed the silver Tucson and a white Toyota Corolla at the intersection.

Within an hour of the shooting, investigators found the white Corolla parked at a residence on Myrtle Avenue in Neptune Township, several blocks from the intersection where the shooting occurred. Six individuals who were on the front porch of the house, including Marvine and Brooks, were taken into custody.

Police obtained warrants to search the house and the Corolla. Officers discovered two handguns in one of the bedrooms: a 9-millimeter Smith & Wesson and a 9-millimeter Taurus. They found a shell casing on the exterior windshield of the vehicle and a black backpack in the back seat. Inside the backpack the police discovered a multi-colored shirt. Marvine was wearing a black shirt with a white Nike insignia at the time of his arrest.

The parties stipulated that both guns were operable and that all the bullets and shell casings found at the crime scene had been fired from the Smith &

Wesson. Neither weapon was registered. Police determined that Brooks had rented the Corolla on July 30, 2019.

Portions of the surveillance video were played for the jury during Raynor's testimony. The video showed a silver Tucson and a white Corolla at the intersection of Ridge and Monroe Avenues at approximately 11:00 a.m. The Corolla pulled alongside the Tucson that was stopped at the intersection and the driver of the Corolla fired several shots from a handgun at the Tucson's driver side window and then drove off. Another surveillance video captured the Corolla in the vicinity of Monroe and Ridge Avenues minutes before the shooting. This video also showed the white Corolla turning around to loop back to where the Tucson was traveling.

Raynor testified that two individuals were in the Corolla. The driver was an African American male with a beard who was wearing a multi-colored shirt and blue pants; the passenger was an African American male of darker complexion than the driver with a beard who was wearing a black shirt with a white Nike insignia on the left side. Still photos of the individuals depicted in the video were shown to the jury.

Perry testified for the defense. He stated that he and Smith, his brother, were driving in Asbury Park when a car pulled up next to theirs and stopped.

5 A-3806-21

The driver rolled down the window, pulled out a gun, and began shooting. Perry testified that Brooks was not the shooter and Marvine was not a passenger in the car.

Izais Normil, one of the individuals who was on the front porch of the Myrtle Avenue residence when the police arrived, also testified for the defense. Normil testified he was at the Myrtle Avenue residence on the morning of August 2, 2021 with Brooks and another male, Dennis Power. At around 10:00 a.m., Normil and Brooks left the residence in Normil's vehicle while Power left in the white Corolla. Normil and Brooks picked up another individual, Sudan Harris, and drove to the Asbury Park municipal court. Normil and Harris went into the municipal building while Brooks waited in the car. After about twenty to thirty minutes, the three drove to an outlet store. After shopping for about forty minutes, they drove back to the Myrtle Avenue residence.

Upon returning, Normil saw the white Corolla parked outside, but Power was not there. Brooks could not find his keys to the Corolla. At this point, Marvine's girlfriend dropped him off at the Myrtle Avenue residence. Police arrived at the residence within minutes of their return. One of the officers found the Corolla's keys in a trash can on the porch. Normil refused to give a statement to the police.

6

Based on the foregoing evidence, the jury found Marvine guilty of conspiracy to commit attempted murder but acquitted him on the other charges.[3] Marvine's motion for judgment notwithstanding the verdict or a new trial was denied. The trial court sentenced Marvine to eleven years imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant raises the following contentions for our consideration:

POINT I

THE IMPACT OF THE PROSECUTOR'S IMPROPER BOLSTERING OF THE TESTIMONY OF HIS WITNESSES CREATED REVERSIBLE ERROR, WHICH WAS NOT CURED BY THE COURT'S LIMITING INSTRUCTION.

POINT II

THE PROSECUTOR COMMITTED MISCONDUCT BY TESTIFYING DURING HIS SUMMATION AS TO THE SIGNIFICANCE OF THE VARIETY OF BULLETS FOUND IN THE TWO GUNS.

POINT III

THE COURT ERRED IN REFUSING TO PROVIDE AN ADVERSE INFERENCE INSTRUCTION AS TO THE STATE'S FAILURE TO PRODUCE THE TESTIMONY OF EITHER OF THE TWO VICTIMS.

---

[3] Brooks was convicted on all counts.

A-3806-21

## II.

We first address defendant's contention the prosecutor improperly bolstered the testimony of the State's witnesses. In summation, the prosecutor stated:

> The State did not present Mr. Perry or Mr. Smith. As I told you earlier, we have an obligation to present testimony we know to be truthful. It's also not necessary to satisfy the elements of the case. What I mean to say is I don't need to hear from Mr. Perry and Mr. Smith in order to satisfy the charges.
>
> . . . .
>
> . . . Mr. Perry testified the way he testified. As to his motivations, it's unclear.
>
> . . . We don't put J'Kier Perry on because we're responsible and we have an obligation to present witnesses we know are going to tell the truth.

Upon the conclusion of the summation, both defendants objected to these remarks. The trial court agreed the remarks were improper and proposed a curative instruction. Counsel for Marvine expressed satisfaction with the trial court's proposed instruction. The trial court then instructed the jury:

> [A]s I'm going to explain in my jury charge, closing arguments are not evidence, they are just that: argument. Evidence comes from the testimony that you have heard and the physical evidence that has been admitted. During closing, the State indicated that it did not call certain witnesses because the State has an

8

> obligation to present only truthful testimony. All attorneys, whether they be for the State or the defense, have an obligation to only present truthful testimony. The credibility of any witness is for you to determine, and for only you to determine.

We begin our analysis by acknowledging the governing legal principles. A conviction will be reversed for prosecutorial misconduct only if "the conduct was so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). Stated another way, "the prosecutor's conduct must have been 'clearly and unmistakenly improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Id. at 438 (quoting Papasavvas, 163 N.J. at 625). Even when the prosecutor's comments "could be termed questionable," a new trial is not warranted unless the comments are "sufficiently severe" to show a clear potential for prejudice. Id. at 440.

The State claims the challenged remarks were a proper response to defendant's summation regarding why the State did not call Perry as a witness. Defense counsel stated in summation that the State did not call many witnesses, and noted that it was the defense, not the State, who called Perry to testify.

However, the law is clear that a prosecutor should not attempt to bolster a witness by vouching for their credibility. State v. Rivera, 437 N.J. Super. 434, 446 (App. Div. 2014). The responsibility for determining the credibility of witnesses is solely within the jury's purview. State v. R.B., 183 N.J. 308, 328 (2005). By stating that he was obligated to only present witnesses who are truthful as the reason for not calling Perry or Smith to testify, the prosecutor implied that neither of those individuals were truthful. We therefore agree with the trial court that the prosecution's remarks were not proper rebuttal and were inappropriate.

The question then is whether the trial court's curative instruction was adequate. An effective curative instruction needs to be "firm, clear, and accomplished without delay." State v. Vallejo, 198 N.J. 122, 134-35 (2009). It must not add commentary that could cause confusion or dilute the instruction's effect. State v. Prall, 231 N.J. 567, 587 (2018).

Defendant now claims the curative instruction was not sufficient because the trial court failed to instruct the jury specifically to disregard the prosecutor's improper remarks. But counsel at the time did not specifically request that instruction. Since defense counsel agreed to the instruction's language, defendant on appeal is required to show plain error, that is, error clearly capable

A-3806-21

of producing an unjust result. Cf. State v. Bragg, 295 N.J. Super. 459, 468 (App. Div. 1996) (finding the defendant is required to establish plain error where he failed to object to the limiting instruction regarding the use of other-crime evidence).

Although the trial court did not specifically state that the jury should disregard the prosecutor's improper remarks, it instructed the jury that all attorneys have an "obligation to only present truthful testimony." Given defense counsel's acquiescence to the sufficiency of the prompt curative instruction, we are satisfied the trial court's lack of instruction to the jury to disregard the prosecutor's specific remarks was not clearly capable of producing an unjust result. Cf. State v. Montalvo, 229 N.J. 300, 329 (2017) (holding that where a defendant does not object to the charge, "there is a presumption that the charge was not error and was unlikely to prejudice [a] defendant's case") (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

## III.

We next address defendant's contention, raised for the first time on appeal, that the prosecutor improperly commented on the ammunition used in the shooting. In his summation, the prosecutor addressed the ballistics evidence, arguing to the jury:

11

When you take a look at the bullets that are found in the cars, you'll find that there are four Winchester bullets as well as one Blazer Luger bullet. And in the chamber of that Taurus .9 millimeter is another Winchester bullet. Why do I say that this is important? When you're a proper gun owner, when you're a proper shooter, somebody who follows the rules of the [S]tate in terms of purchasing and registering guns, common sense tells you that you buy guns and bullets in en masse. You buy a box of Winchester. You buy a box of FCs. You buy a box of TulAmmos. And you shoot those till you're done and you buy yourself another box.

. . . .

You have the two guns that are found at the same spot in the house where these two men are out front, on the front porch, and it's a mixture of ammunition that is the same. What I meant to say, the Blazers are in both guns, the Winchesters are in both guns. That's shared ammunition. And when you have an illegal handgun, you use what you can get.

Defendant contends the prosecutor was, in effect, testifying from his own personal knowledge with regards the ammunition rather than from the evidence adduced at trial. However, defendant did not object to the prosecutor's remarks. Therefore, this issue is raised as plain error. R. 2:10-2.

Prosecutors are afforded considerable leeway in their closing arguments, provided their comments are reasonably related to the scope of the evidence presented. State v. Frost, 158 N.J. 76, 82 (1999). References to matters outside the evidence may constitute prosecutorial misconduct. State v. Jackson, 211

12

N.J. 394, 408 (2012). Thus, the argument must be "confined to facts in evidence or upon the reasonable inferences therefrom." State v. Hill, 47 N.J. 490, 499 (1966).

Furthermore, "even when a prosecutor's remarks stray over the line of permissible commentary," State v. McNeil-Thomas, 238 N.J. 256, 275 (2019), "the severity of the misconduct and its prejudicial effect" must have been "so egregious as to deprive the defendant of a fair trial." Ibid. (quoting Wakefield, 190 N.J. at 437). As the Court noted in Frost, "[t]he failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made." 158 N.J. at 84. We add that in this trial, it is clear counsel was aware of the right to object following the prosecutor's remarks concerning ammunition since counsel did object to the prosecutor's improper reference to the credibility of State witnesses.

In this instance, even accepting defendant's contention that the prosecutor's comments about ammunition were not based on evidence presented to the jury, for purposes of the harmless error analysis, it is clear that the prosecutor's argument about the ammunition was not a central issue in the case. Defendant does not dispute that the recovered ammunition was used in the shooting. The prosecutor's reference to "shared ammunition," moreover, was

13

not an assertion that defendants shared their ammunition, but that the ammunition came from different boxes or manufacturers. The parties did not dispute the significance of utilizing different ammunition in the same gun.

Defendant argues that the comment could have led the jury to conclude that each defendant possessed a gun and loaded them from a "common stash" of ammunition, thereby supporting the State's conspiracy theory and ensuing conviction. That newly-minted theory is simply too attenuated and speculative to establish plain error, especially considering the jury acquitted defendant on the weapons charges. In sum, we conclude that any error committed by the prosecutor in his closing arguments regarding the ammunition was not clearly capable of producing an unjust result.

IV.

Marvine contends the trial court abused its discretion by denying his request to provide an adverse inference instruction to the jury regarding the State's failure to call the victims, particularly Smith, to testify. We are unpersuaded. The determination of whether to give an adverse inference charge is reviewed for abuse of discretion. State v. Dabas, 215 N.J. 114, 131-32 (2013).

Generally, a failure of a party to produce a witness who would "elucidate the facts in issue, raises a natural inference that the party so failing fears

14

exposure of those facts would be unfavorable to him." Clawans, 38 N.J. at 170. For the inference to be drawn, it must appear that the individual "was within the power of the party to produce and that his testimony would have been superior to that already utilized in respect to the fact to be proved." Id. at 171. The inference is not proper if the individual is unavailable or whose testimony would be "cumulative, unimportant or inferior to what had already been utilized." In addition, the "failure to call a witness available to both parties . . . preclude[s] the raising of an inference against either." Ibid. Thus, in determining whether to give a Clawans charge, the court must set forth on the record its findings on these issues:

> (1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
>
> [State v. Hill, 199 N.J. 545, 561-62 (2009) (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985)).]

We apply these legal principles to the present situation. The trial court had initially indicated that it was going to include a <u>Clawans</u> charge in the jury instructions if the State failed to call Smith as a witness. The prosecutor stated that even though he had served a subpoena on both of the victims, he would wait to see how Raynor's testimony went before deciding whether to call them.

The prosecutor ultimately decided not to call these witnesses. At the formal pre-charge conference, the State offered reasons why a <u>Clawans</u> charge would be inappropriate here.

The trial court ultimately agreed with the prosecutor that Smith was not "peculiarly within the control or power of the State." The trial court noted that it "did not go well when the [c]ourt tried to get . . . Smith here." It acknowledged that the defense had sought the court's assistance in getting Smith to testify by way of a subpoena and a writ but was unable to convince Smith to comply. The court further reasoned the fact that the prosecutor had previously prosecuted Smith "would make him . . . even less likely to be accommodating." Thus, the trial court found that Smith was no more in the custody or control of the prosecution than of the defense. The trial court also relied on Smith's statement to the police that he "did not see anything" but was watching a rap video at the time the shooting occurred. Finally, the trial court ruled that any relevant

16

testimony Smith might provide was not superior to the video and still photographs.

We are satisfied the trial court in no way abused its discretion in ruling that a Clawans charge was not appropriate in these circumstances.

V.

Finally, we address defendant's contention that the trial court erred by denying his motion for either a judgment of acquittal notwithstanding the jury verdict or a new trial. Defendant claims the State presented no evidence that Brooks was planning to do the shooting, no evidence of any history between the two defendants, and no evidence that Marvine sought to promote or to make it easier to commit the crime.

In addressing defendant's argument, we begin by noting the evidence against Marvine is by no means overwhelming, in contrast to the evidence that links codefendant Brooks to the shooting. But that is not the test we must apply. Rather, when reviewing a decision on a motion for judgment notwithstanding the verdict, an appellate court must determine whether the evidence adduced at trial, viewed in its entirety, and giving the State the benefit of all reasonable inferences, was sufficient to support a guilty verdict. State v. Lodzinski, 246 N.J. 331, 358-59 (2021). So too a trial court's ruling on a motion for a new trial,

"shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. Furthermore, a motion for a new trial is addressed to the discretion of the trial court and the exercise of that discretion will not be disturbed on appeal unless a clear abuse has been shown. State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000).

Turning to substantive legal principles, conspiracy is an inchoate offense; completion of the underlying offense is not required to sustain a conviction. State v. Samuels, 189 N.J. 236, 245-46 (2007). Conspiracy, moreover, may be proven by circumstantial evidence. Id. at 246. An implicit agreement, for example, may be inferred from the facts and circumstances of the case. State v. Kamienski, 254 N.J. Super. 75, 94 (App. Div. 1992). "Proof of the existence [of a conspiracy] is generally a matter of inference deduced from certain criminal acts of the parties accused, done in pursuance of an apparent criminal purpose in common between or among them." State v. Seaman, 114 N.J. Super. 19, 29-30 (App. Div. 1971). "[T]here are no legal rules as to what inferences may be drawn. The question is one of logic and common sense." Samuels, 189 N.J. at 246.

However, mere presence at the scene of the crime is insufficient to establish conspiracy. Id. at 249. The same is true for "mere association"

between the defendant and the alleged co-conspirator. Ibid. (quoting State v.

Abrams, 256 N.J. Super. 390, 401 (App. Div. 1992)).

Here, in denying defendant's motion for acquittal, the trial court found:

> [T]he evidence against Brooks and Marvine is not circumstantial. . . . [T]here is a considerable amount of direct evidence in this case.
>
> . . . A reasonable juror can infer that the evidence as presented by the State . . . was part of an agreement or plan between Brooks and Marvine. The original loop on Ridge and Monroe circling back to the scene was part of a plan between the individuals to locate the victims.
>
> . . . .
>
> . . . [I]mportantly in this case, there was sufficient evidence to suggest that Mr. Marvine was not . . . merely present at the scene of this offense. . . . [H]e was present before the shooting, before the loop around . . . he was present at the shooting, and extremely importantly he was present after the shooting.
>
> . . . [B]oth [defendants] were located with the suspect car and two handguns at a residence on Myrtle Avenue. The fact that Marvine was in the car with Brooks during the shooting may not have been enough to support a conspiracy charge, but that information combined with the fact that he was driving around with Marvine beforehand, and the fact that he remained with Brooks for a significant period of time after the shooting suggests that he was part of the plan, that he lent his continence and approval to it, and he aided Mr. Brooks in the shooting.

19

> Based on all of that information and testimony that was presented . . . a reasonable jury could find beyond a reasonable doubt that there was sufficient evidence for the conspiracy charge.

Although the State's case against Marvine was not overwhelming, we have no basis upon which to substitute our reading of the cold trial transcript for the trial court's finding that there was more here than mere presence and association. Notably, defendant was seen in the car with Brooks before, during, and after the shooting, including the "loop" taken immediately before the shooting. Moreover, defendant went with Brooks to the Myrtle Avenue house after the shooting and remained there with him. The weapons involved in the shooting were found at that house. In sum, giving the State the benefit of all reasonable inferences, see Lodzinski, 246 N.J. at 358-59, we are not persuaded the trial court abused its discretion in finding that the evidence supported the inference that Marvine conspired with Brooks.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-3806-21